## NOWLIN-CARR COMPANY v. COOK.

### Opinion delivered May 10, 1926.

1. MASTER AND SERVANT—INDEPENDENT CONTRACTOR.—In an action against an alleged employer and employee for negligence causing injury to plaintiff, evidence *held* to establish that the alleged employee was in fact an independent contractor, and that the alleged employer was not liable for the negligence of such independent contractor.

2. MASTER AND SERVANT—LIABILITY OF INDEPENDENT CONTRACTOR.—Evidence *held* to sustain a finding that plaintiff was injured by the negligence of an independent contractor.

3. APPEAL AND ERROR—AFFIRMANCE OF JUDGMENT.—Where, upon the same cause of action, the jury returned a verdict for $600 against an alleged employer and $400 against an alleged employee, and the former verdict was not sustained by the evidence, the verdict and judgment against the latter, being sustained by evidence that he was an independent contractor, will be affirmed.

Appeal from Clark Circuit Court; *James H. McCollum,* Judge; reversed as to Nowlin-Carr Company and affirmed as to Flanagin.

*McMillan & McMillan* and *J. A. Sherrill,* for appellant.

*W. H. Mizell* and *H. B. Means,* for appellee.

SMITH, J.   Appellee sued H. Flanagin and the Nowlin-Carr Company jointly for damages alleged to have been suffered by him by reason of the loss of a finger while operating an equalizer saw at a sawmill which appellee alleged was operated by Flanagin for the Nowlin-Carr Company.

The following verdict was returned by the jury: "We, the jury, find for the plaintiff in the sum of $1,000

as follows: $600 against the Nowlin-Carr Company and $400 against H. Flanagin." Upon this verdict judgment was rendered against Flanagin for $400 and against the Nowlin-Carr Company for $600, and these defendants have appealed from that judgment.

The complaint filed in the case alleged that on August 4, 1923, appellants were engaged in the manufacture of staves, with Flanagin in charge of the mill for the Nowlin-Carr Company. That appellee, who was known to be without experience, was placed in charge of the equalizing saws, and, after working about fifteen minutes, the latch on the carriage, which had become worn, and which, on account of its worn condition, was likely to come loose, did come loose and permitted the carriage, on which appellee was required to place bolts of wood to be conveyed into the equalizing saws, to swing his hand into the saw, and cut off one of his fingers.

At the time of appellee's injury Flanagin was operating the mill under the following contract for the output of the mill:

"CONTRACT OF SALE.

"Made at Arkadelphia, July 2, 1923, between H. Flanagin as contractor and Nowlin-Carr Company as the company.

"Conditions: The contractor sells to the company 400,000 pieces red and white oak staves, delivery to begin September 1 and be completed January 1, 1924; deliveries to be made in carload quantities; stock to be thoroughly seasoned and finished and manufactured so as to prevent shrinkage and dressing and pointing; price to be f. o. b. Arkadelphia, Arkansas, and ranging from $35 to $60.

"If it shall become necessary during the life of this contract to advance any funds to the contractor on stock undelivered, it is well understood that said advance is for the convenience of the contractor, who shall allow the company $10 for each advance ordered. Advances shall be determined on the following basis: The company shall count and measure the stock upon which

advances are to be made, and the company will advance the contractor on each one thousand staves inspected on the yard, on which all claims have been paid or which will be paid with the funds advanced, not to exceed the following basis: Payrolls to be made every two weeks by the company on the basis of the actual cost of the labor at the mill and cutting and hauling of the bolts and buying the timber, on the basis of 75 per cent. of the value of the staves, whether on the mill-yard or on the yard at the railroad. No advances will be made on stock unless yarded. Positively no drafts will be honored nor advances made except as above outlined, and not oftener than twice monthly. The total amount of funds to be advanced or outstanding on undelivered stock on this contract shall not exceed $5,000. No funds nor credits derived from shipments or deliveries of staves shall be credited on securities until all unsecured advances have been paid.

"The right to defer advancing funds is reserved in case of strikes, panics, etc.

"The company reserves the right to require indemnity bonds at its own expense. Advances made shall constitute a lien on all stocks, and the contractor agrees to keep all stock free from other liens, and to maintain fire insurance payable to the company covering funds advanced, and to furnish the company with a lease covering the location of the stock for a period sufficient to protect the contract. The company reserves the right to sell the property in the event the contractor attempts to move or sell same without the company's consent.

"To enable the contractor to perform his part of this contract, it is agreed that the company shall furnish rent-free to the contractor to be operated solely by the contractor without liability to the contractor, a boiler and engine to be furnished contractor f. o. b. loading point, who shall maintain a fire insurance policy in favor of the company, the premiums to be paid equally by the company and the contractor, and the machinery to be redelivered to the company at Arkadelphia when

this contract is terminated.   This machinery is furnished to manufacture staves solely for the company.   It is further agreed that the company shall be entitled to require delivery of the staves called for above and to charge the contractor $2.50 per thousand for the undelivered portion thereof, and any portion of said staves refused by the company shall be charged to the company at $2.50 per thousand."

It was shown in the testimony that the men employed at the mill were paid in the following manner:   Checks were furnished Flanagin by the Nowlin-Carr Company, which were filled out by Flanagin for the amounts due the employees to whom the checks were payable, and Flanagin wrote his name across the checks.   The checks were then signed by a representative of the Nowlin-Carr Company, and were then delivered by Flanagin to the employees to whom they were payable, and were paid by the bank on which they were drawn, out of funds belonging to the company.

A witness named McDaniel, who was employed at the mill, was asked for whom he was working, and answered: "Nowlin & Carr, I suppose."   An objection was made to this answer, when witness was asked to state for whom Flanagin was working, if he knew, and he answered, "Well, he (Flanagin) told me he was working for Nowlin & Carr just like myself.   He was cutting these staves so much a thousand, and he was drawing so much a month there until he checked up."   On his cross-examination the witness testified:   "I was working for Mr. Flanagin. He hired me."   He was then asked, "Well, you were not working for Nowlin-Carr?" and answered: "If I was to work for you and somebody else sent my checks, I am working for you; no matter where my money come from, I am working for you."

The testimony on the part of both appellants was to the effect that the contract set out above fully and truthfully stated the relation between Flanagin and the Nowlin-Carr Company; that Flanagin had sole charge of the operation of the mill; that he employed and discharged

all the labor, and that Flanagin alone directed the men what to do and how to do it, and that no one connected with the Nowlin-Carr Company had any control or part whatever in the operation of the mill, except as stated in the contract. Flanagin denied that he had ever stated to McDaniel that he was working for the Nowlin-Carr Company; but we must assume that the jury credited the testimony of McDaniel on this disputed question rather than that of Flanagin. However, proof of Flanagin's declaration would not bind the Nowlin-Carr Company nor change the contract under which the mill was being operated.

This contract was in writing, and provided that the Nowlin-Carr Company should pay Flanagin a stipulated price per thousand for staves, and should advance the money to meet the payrolls of the employees, and the method employed in issuing the checks was adopted in order that the Nowlin-Carr Company might know that there were no liens for labor against the staves on which the advances were made.

Flanagin testified that he bought the machinery from the Arkadelphia Milling Company, of Arkadelphia, and that it was his property, except the boiler and engine, which the Nowlin-Carr Company furnished free of rent.

We think the testimony set out above made no issue for the jury whether Flanagin was operating the mill for the Nowlin-Carr Company. Certainly Flanagin, although he did not own everything about the mill, was an independent contractor. The law of the subject has been so frequently and thoroughly discussed by this court that we will not again discuss it here. The full discussion and review of the authorities in the very recent case of *Moore Lumber Co.* v. *Starrett,* 170 Ark. 92, renders this unnecessary.

We conclude therefore that the court was in error in submitting the question of the liability of the Nowlin-Carr Company for appellee's injury.

The cause was submitted to the jury upon two theories; first, that appellee was known to be an inex-

perienced man, and was placed at work without any instructions as to the manner in which he should perform the duties of his employment to protect himself from injury; and second, that the latch on the carriage had became defective through wear. We think there was sufficient testimony to carry both these issues to the jury.

Appellee testified that he was a farm-hand, and knew nothing about sawmilling. That he was employed on Tuesday and put to work in the woods, and worked there until Saturday morning, when he asked Flanagin what he had for him to do, and Flanagin told him to run the equalizer. Appellee testified that he told Flanagin he did not know anything about running the equalizer, but that he would try, and Flanagin answered, "Well, you can try, and if you can't, that's all a mule can do." Appellee further testified that no one told him anything, and he just started to work. He had never seen a stave-mill before, nor a bolt equalizer, and his only instruction was to go to the equalizer and do the equalizing. There was a lever for letting the bolts on to the carriage, which carried them to the saws, and this he learned to operate without any instruction. There were two circular saws which sawed off and evened up the two ends of the bolts as the carriage on which the bolts were placed conveyed the bolts into the saws. No one told witness how to hold the bolts as they were conveyed into the saws. Appellee had been at work about fifteen minutes, when his hand came in contact with one of the saws, and he lost a finger. Appellee further testified that, if the latch had held in position, he would not have been injured. Appellee also testified that Flanagin said, immediately after the injury, that he had intended to instruct appellee, but had been busy and bothered about the boilers, and for that reason had not done so. That Flanagin carried appellee to a doctor, and on the way said, "I feel that I am to blame for it; you are the first inexperienced hand I ever put there."

Henry Cates, an experienced employee, who had worked at the equalizer, testified that "it seemed like

the slide that went back over the rod might have been worn, and that's what caused it to jump off; that the weight of the bolt naturally pulled the carriage into the saw."

Appellee admitted that he observed the saws and knew the danger of coming in contact with them, but his duties required him to use the saws, and we think there was a question for the jury whether his employer was negligent in failing to instruct him how to perform his duties without incurring unnecessary risk of danger, and that there was also a question as to the defect in the machine. The testimony on the part of appellants was to the effect that there was no defect, but this was a question for the jury. We conclude therefore that the question of Flanagin's liability was a question for the jury.

The judgment in this case against the Nowlin-Carr Company must be reversed, and, as the case has been fully developed, it will be dismissed as to that appellant.

Moreover, the judgment against Flanagin can only be affirmed for $400, for this was the amount of the verdict against him. There was only one cause of action; only one injury; and there could therefore be only one recovery. Of course, two or more persons might be liable for the injury, but the liability would be joint, and not several. *Spears & Purifoy* v. *McKinnon,* 168 Ark. 357.

It is true there was a verdict against the Nowlin-Carr Company for $600, and if this were the only verdict we would affirm the judgment pronounced thereon against Flanagin for that amount, but, for some reason not explained in the record, the jury returned a verdict against Flanagin for a smaller amount, and, as we hold that Flanagin is liable, we can affirm the judgment against him only for the amount of the verdict returned against him.

The judgment against Flanagin for $400 is therefore affirmed; that against the Nowlin-Carr Company for $600 is reversed and dismissed.