STATEMENT OF FACTS.
This appeal comes from a judgment for damages assessed in a suit for malicious prosecution.
The facts are substantially that the appellant, the Wear-U-Well Shoe Company, a corporation, with its principal place of business at Kansas City, Missouri, operates chain stores in various places and parts of the country, and furnishes its shoes to different persons to sell on a commission basis, the shoes being sold by the persons to whom furnished and the proceeds remitted to the company.
On or prior to May 25, 1926, the appellee, Armstrong, was engaged in the selling of shoes for appellant in the city of Bentonville. He had notified appellant that he desired to settle up and quit, and they had requested him to wait until the auditor in the regular course reached his place. John Rule, who was sued jointly with appellant, was, at the said date, auditor of the company, and came to Bentonville about May 25. 1926, on his regular round of auditing the accounts of the various persons and agencies handling shoes for appellant, and, upon the audit of Armstrong's account, a dispute arose as to the amount he owed the appellant company, Rule demanding $68.20 and Armstrong insisting that certain credits, naming them, should be given him, and that he only owed $56.95, which he offered to pay. *Page 593 
After some controversy Rule became impatient, and said that if the whole amount was not paid he would have him arrested for embezzlement as soon as he could hear from the company. Rule sent and received in reply the following telegram and answer thereto:
"Western Union Telegram
"Received at 2026 Broadway, Kansas City, Missouri.
"Bentonville, Arkansas.
"1114A May 26, 1926.
"Wear-U-Well Shoe Company, K. C. Mo.
"Shortage sixty-eight twenty gross tickets fifty-six ninety-five agent refuses to pay difference shall I prosecute have signature on audit.
"John Rule."
"1134A."
"Western Union Telegram
"Received at 1221 South Main Street, Bentonville, Arkansas.
"Kansas City, Mo. 1208P
"May 26, 1926.
"John Rule, Bentonville, Arkansas.
"Collect cash in full or have party arrested embezzlement charge.
"Wear-U-Well Shoe Co.
"1252P."
Rule showed the reply to his telegram to (appellee, who still refused to pay more than $56.95 in settlement, the amount he conceded to be due. He then laid the whole matter before the prosecuting attorney with a view to having Armstrong arrested for embezzlement, and was advised by the prosecuting attorney, who refused to have a warrant issued, that he ought not to have Armstrong arrested. He persisted in the matter, and went to a justice of the peace and swore out a warrant for his arrest on a charge of embezzlement, and Armstrong was arrested, and, upon the examination or trial, discharged.
Fred Wilson testified he was secretary and treasurer of appellant company, which had auditors to check up the *Page 594 
affairs and accounts of its different sales agencies. That John Rule was the auditor of the company on the 25th and 26th of May, 1926, and that it had a contract with Armstrong, the appellee, under which he was employed as sales agent at Bentonville, Arkansas, for the disposal of the company's goods, receiving a commission for making sales. That Armstrong advised the company, about the 20th of May, that he wanted to quit the business, and asking that a man be sent to check him up. Rule went to Bentonville to make the audit, on his regular tour. He admitted that the company received the telegram and sent the reply thereto, as already set out, but said he thought it related to the agency at Nowata, Oklahoma, where there had been a shortage of which the company had been notified by Mr. Rule from Independence, Kansas, on the 19th of May asking: "Please wire me at Bentonville what to do about the shortage of Boggs at Nowata, Oklahoma; will be there about the 25th." He thought, in sending the telegram to Bentonville, that he was ordering the arrest of Boggs in Oklahoma, and not Armstrong. While the company had understood that Boggs' shortage was $198, he had none of the papers, and was not definitely informed, and they had no other report from Rule after he wrote from Independence, Kansas, on the 19th, until the telegram was received from Bentonville on the 25th.
Appellee testified that he was a shoe repair man, and sold some shoes, and had resided at Bentonville, and had a contract with appellant company for the sale of its shoes, made August 16, 1924, under which they furnished him shoes amounting to $800 to sell on a commission basis. It was introduced in evidence. He continued to sell shoes for them until May 26, 1926, without any misunderstanding or unpleasantness. Settled with them once a year, and was checked up three times a year. The company made no objection to his method of keeping accounts. He kept tickets for each sale made, and sent them in with his report, and all the money received, and the house sent him his 10 per cent. *Page 595 
commission from Kansas City. Said he notified them in May that he wanted them to take up the agency, and they sent Rule down to check him up. He was out of town, and, when he returned, Rule had the shoes all packed and ready to send out, and handed him a check-statement, which he signed without verifying it. "All of the stock was listed by numbers. The ticket showed I owed the company $56.95. He made up the statement, and I signed it. We tried to get a settlement of just how much I owed. After he figured it all up he figured I owed him $68.20, and a dispute arose. I claimed it amounted to $56.95. I claimed I was entitled to some credits for shoes he didn't take up, but he would not allow them, and I offered to pay the $56.95, and made out a check for that amount. He wouldn't take the check. The difference arose over some certain rubber-heel shoes which I wanted them to take back, and Mr. Rule would not do it. He claimed that the shoes had been worn. He took up the stock of shoes I had, but wanted me to pay the $68.20, and I refused to do it. Mr. Rule had me arrested. He said he was going to wire the company and ask them about it. The deputy sheriff served the warrant on me on the 26th of May, charging me with embezzlement."
Witness had been selling the shoes for appellant for two years, made up his own statements, and never had any trouble with them or been complained about. Introduced a letter from appellant, in reply to his request for an audit of his accounts in the closing of his business, in which it stated that they would cancel his contract, if he desired it, but could not do so until they could get a man to Bentonville to check up his accounts and dispose of the shoes. Said they preferred to have it done by the regular auditor on his usual rounds. Expressed regret that witness found it necessary to terminate "their pleasant business relations," etc.
Beasley, the deputy prosecuting attorney, stated that he asked Rule to explain his case, had him go over the whole case, and then advised him not to have the man *Page 596 
arrested. "Told him I did not think he could convict, and that he might have a damage case. Rule said something about collecting debts that way, didn't remember exactly what it was."
Rule made no answer, and was not present at this trial.
The jury returned two separate verdicts, one "against John Rule in the sum of $750," and the other against appellant company "in the sum of $1,750," each signed by S. B. Banks, foreman, and from the judgments thereon this appeal is prosecuted.
(after stating the facts). Appellant contends that certain instructions objected to were erroneous, but a careful examination of them does not disclose any error committed, and the court gave all the instructions asked by appellant, except the one for a directed verdict. It is insisted, however, that the court erred in returning judgment against appellant upon the jury's separate verdict for a larger sum that the amount the jury found against the joint tort-feasor, Rule.
In the case of Spears Purifoy v. McKinnon,168 Ark. 357, 270 S.W. 524, where the plaintiff was injured through the joint negligence of two surgeons, and recovered a judgment for damages in the total sum of $7,000, which recited that one-half thereof, or $3,500, be recovered against each of the defendants, the court modified the judgment pronounced thereon, limiting the total sum recovered to $3,500, saying that the defendants were joint tort-feasors and liable as such, if at all, but, as there was only one tort and one damage, there could be only one recovery, and, as the jury had fixed the liability of each tort-feasor at $3,500, there could be no greater recovery against either or both of them than that sum.
So here there was only one tort committed and one damage resulting therefrom, and, since the jury fixed the liability of each tort-feasor and that of Rule, who actively committed I he wrong, his company only being *Page 597 
liable therefor as having consented thereto and authorized his act, and since he was liable also for the whole damage resulting, there could be no greater recovery against either or both of the joint tort-feasors than the lower sum assessed by the jury against Rule, $750.
The lower court should only have rendered a judgment upon the finding or verdict of the jury in the said sum of $750, which can and will be rendered here. See Coleman v. Gulf Refining Co. of La., 172 Ark. 428,289 S.W. 2, 26 R.C.L., 32, page 780; Marriott v. Williams,152 Cal. 705, 93 P. 875, 125 Am. St. Rep. 87; Smithwick v. Ward, 52 N.C. 64, 75 Am. Dec. 453; and Nashville Ry. etc. Co. v. Trawick, 118 Tenn. 273, 99 S.W. 695, 10 L.R.A. (N.S.) 191, 121 Am. St. Rep. 996, 12 Ann. Cas. 532.
The judgment is modified accordingly as indicated, and, as modified, will be affirmed. It is so ordered.