SHULTZ *v.* YOUNG.

4-6991                    169 S. W. 2d 648

Opinion delivered March 15, 1943.

534

*Hugh M. Bland,* for appellant.

*Joe D. Shepherd,* for appellee.

SMITH, J. Appellee, a resident of Pope county, brought suit in the circuit court of that county to recover damages for an assault committed upon her by appellants in Sebastian county, in which county appellants were served with process. This service was authorized by act 21 of the Acts of 1941, p. 48.

It is impossible to reconcile the testimony in the case. According to appellee, she went from her home in Russellville, Pope county, to Fort Smith, in Sebastian county, to collect a past-due bill given her by appellant, Shultz, and, upon going to Shultz' place of business, appellants assaulted her without provocation or justification. Testimony in appellant's behalf is to the effect that Shultz took no part in the altercation and appellant, Myrtle Liberto, acted only in her necessary self-defense, after appellee had assaulted her. Inasmuch as there were verdicts, later to be discussed, against both appellants, we must test the sufficiency of the testimony to support the verdicts by consideration of the testimony offered by appellee, and in her behalf.

According to testimony offered in appellee's behalf, she went to Shultz' place of business and demanded pay-

ment of the due bill. She was ordered away, and, when she refused to go until the debt was paid, appellant, Myrtle Liberto, picked up an iron bar and struck appellee with it. The blow knocked a front tooth loose and cut a gash in appellee's face. Appellee appealed to Shultz for protection, but he did not give it; on the contrary, he pushed her against the wall and then knocked her down. Every time she attempted to arise, Shultz would knock her down. Shultz picked up a bottle, which had contained a soft drink, and gave the bottle to Myrtle Liberto, who beat appellee over the head with the bottle until it broke. Appellee was beaten into insensibility and was carried to the Welfare Building where she was given surgical aid. She was substantially corroborated as to the extent of her injuries by two physicians who attended her.

This testimony, if accepted as true, and its truthfulness was, of course, a question for the jury, not only makes a case for the jury, but is sufficient to support the substantial verdicts rendered in this case.

The court charged the jury that there might be a recovery against either or both appellants, and the jury was further told that the damages might be apportioned between appellants. The instructions also defined the conditions under which exemplary damages might be assessed. A verdict was returned against Shultz for $2,000 and a separate verdict was returned against Myrtle Liberto for $500, and from the judgments rendered upon these verdicts is this appeal.

For the reversal of these judgments two errors are assigned in the motion for a new trial; first, that the Pope circuit court was without jurisdiction, and, second, that the judgments may be affirmed for the amount only of the smaller verdict.

Considering these assignments of error in the order stated, it appears that the Pope circuit court assumed jurisdiction of the action upon the authority of act 314 of the Acts of 1939, p. 769, commonly referred to as the Venue Act, § 1 of which reads as follows: "All actions for damages for personal injury or death by wrongful

act shall be brought in the county where the accident occurred which caused the injury or death or in the county where the person injured or killed resided at the time of injury, and provided further that in all such actions service of summons may be had upon any party to such action, in addition to other methods now provided by law, by service of summons upon any agent who is a regular employee of such party, and on duty at the time of such service.''

This section gives the person injured the option of suing in the county where the injury occurred, or in the county in which the injured party resided at the time the injury was sustained. Appellants insist that the statute is applicable only to "accidents," and that an assault may not be called an accident. The case of *Coca-Cola Bottling Co.* v. *Kincannon, Judge,* 202 Ark. 235, 150 S. W. 2d 193, 134 A. L. R. 747, is opposed to this view, and is decisive of this question. It was there said: ''The word 'accident' was not used in a metaphysical sense, but as commonly employed and usually understood, and in the act means the incident or the wrongful act which caused the injury. For a pure accident, not caused by negligence or wrongful act, there would be no liability.''

Stated otherwise, the effect of that holding is that the word "accident," as used in the act, is synonymous with the word incident, and, as appellee was a resident of Pope county at the time of her injury, the circuit court of that county had jurisdiction of the cause of action.

The second point is that as appellee was injured through the concurring willful acts of appellants, she cannot have satisfaction in a sum exceeding the smallest verdict returned against either of the tort-feasors, this upon the theory that damages for a joint tort must be assessed in a single sum, and the recovery of damages cannot be in excess of the smallest amount awarded against any one of the tort-feasors. The case of *Southwestern Gas & El. Co.* v. *Godfrey,* 178 Ark. 103, 10 S. W. 2d 894, and the cases there cited, are relied upon to sustain this contention.

These cases sustain this contention, but, subsequent to the rendition of those opinions, act 315 of the Acts of 1941, p. 788, was enacted. This is an act entitled: ''An act concerning contribution among tort-feasors, release of tort-feasors, procedure enabling recovery of contribution, and making uniform the law with reference thereto.''

This is one of the acts prepared by the National Conference of Commissioners on Uniform State Laws, and appears in vol. 9, Uniform Laws Annotated, p. 159, *et seq.,* and is there entitled ''Uniform Contribution Among Tort-feasors Act.''

The purpose of such legislation is, of course, to provide harmony and uniformity in the laws of the states which enact such legislation. This purpose is declared in § 9 of the act, which reads as follows:

''Section 9. (Uniformity of Interpretation.) This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the laws of those states that enact it.''

These commissioners have appended notes to the act expressive of their intention in its enactment, and their opinion as to the meaning of its provisions. The note applicable to the point here in question reads as follows: ''The apportionment device is intended to work as follows: If the evidence indicates that there is a disproportion of fault as among the tort-feasors, the court shall instruct the jury that if it finds the tort-feasors to have been negligent, they shall also fix their relative degrees of fault. Thus if the court believes that an apportionment of fault is inappropriate in a particular case, none will be made. Naturally, a court trying a case without a jury will itself make the apportionment of fault when appropriate. Under the English tort contribution act the court always makes the apportionment; but the draftsmen feel that in the United States this had best be left to a jury within the ordinary power of a court to keep the issue of negligence from a jury when the evidence indicates that submission thereto would not be warranted.'' Vol. 9, U. L. A., p. 163.

While we are not necessarily bound by this interpretation it is very highly persuasive and should be adopted, unless we are clearly convinced that an erroneous interpretation has been given the act by the commissioners, or that it is contrary to the settled policy of this state as declared in the opinions of this court.

By analogy the rule for the construction of statutes adopted from other states is applicable here. Many of these cases are cited in vol. 16, West's Digest of the Decisions of the Supreme Court of this state in key number 226 of the chapter on Statutes.

A headnote to one of these cases, that of *McNutt* v. *McNutt,* 78 Ark. 346, 95 S. W. 778, reads as follows: "Where the Legislature adopts a statute of another state which has received a definite construction by the courts, it will be taken that this interpretation also was adopted."

In another of the numerous cases there cited, *St. Louis, I. M. & S. R. Co.* v. *Kirtley,* 120 Ark. 389, 179 S. W. 648, it was said: "The rule is that the construction of a borrowed statute is adopted with it unless contrary to the settled policy of the state adopting the statute. *McNutt* v. *McNutt,* 78 Ark. 346, 95 S. W. 778; *Nebraska Natl. Bank* v. *Walsh,* 68 Ark. 433, 59 S. W. 952, 82 Am. St. Rep. 301."

Now, as has been said, this act is opposed to the rule announced in the case of *Southwestern Gas & El. Co.* v. *Godfrey, supra,* but the purpose of the act is to change that rule, and it is within the power of the General Assembly to do so. *Apel* v. *Kelsey,* 52 Ark. 341, 12 S. W. 703, 20 Am. St. Rep. 183.

The testimony is sufficient to sustain the verdicts, and the jury had the power to apportion the damages. As no error appears, the judgments must be affirmed, and it is so ordered.