JAMES H. WOODWARD *v.* MARY J. BLYTHE, ADM'X ESTATE OF KERMIT A. BLYTHE, DECEASED

5-5364                                    462 S. W. 2d 205

Opinion delivered January 11, 1971
[Rehearing denied February 15, 1971.]

794

*Wright, Lindsey & Jennings*, for appellant.

*Guy H. Jones, Sr., Phil Stratton* and *Guy H. Jones, Jr.*, for appellee.

FRANK HOLT, Justice. This case, resulting from a multiple car collision, is before us for the second time. The circumstances surrounding the accident were ex-

tensively detailed in our first opinion, *Woodward* v. *Blythe*, 246 Ark. 791, 439 S. W. 2d 919.

Appellee's decedent, Kermit Blythe, was driving a red Corvair in, an easterly direction on Highway 70 in the early morning hours of February 14, 1966. He was followed by appellant in a light blue Dodge. A white Cadillac, also headed east, was stalled on the right shoulder of the road and left there unlighted and partially on the pavement. The decedent, veering suddenly to his left to avoid the stalled automobile, sideswiped an oncoming white Pontiac. The impact caused a forward halt and counterclockwise rotation of the Corvair, positioning its left front portion in the path of appellant's eastbound Dodge. Within a few seconds, the Dodge, after skidding 83½ feet, struck the left front or driver's side of the Corvair, then deflected slightly to the right for a distance of 25 to 30 feet where it struck the rear of the stalled Cadillac and there came to a stop. The Corvair traveled another 50 feet eastward after the second impact before coming to rest. A few minutes thereafter, appellee's decedent, having sustained head injuries, a crushed chest, broken legs and other bodily injuries, was found dead in his Corvair. The left front portion and door of his car were crushed inward. The driver's seat, partially torn loose, was pushed to the right, as were the steering shaft and wheel. The decedent's body was found strapped in his seat and lying to the right.

In an action for wrongful death, a jury awarded $137,000 to appellee against appellant and a codefendant, Leonard Johnson, who was the operator of the stalled Cadillac. Johnson did not appeal from the judgment against him. Appellant, however, appealed and gained a reversal on the basis of a deficiency of proof as to whether his negligence was a proximate cause of decedent's death. Upon retrial, a jury verdict and judgment of $150,000 was entered against appellant. The present appeal follows.

For reversal appellant contends that he was entitled to a verdict and judgment as a matter of law because there was no substantial evidence that he was

negligent. We cannot agree. On first appeal, appellant likewise contended that there was no substantial evidence to support a finding that he was guilty of negligence. We held to the contrary, stating:

> [W]e cannot say as a matter of law that the evidence is insubstantial that the appellant was following too closely or failed to keep a proper lookout, or failed to keep his vehicle under control.

This holding has become the law of the case. Since the evidence offered at the first trial as to the issue of negligence was reproduced upon retrial, our previous decision regarding the existence of substantial evidence of negligence is now conclusive upon the parties. *St. Louis S. W. Ry. Co.* v. *Jackson,* 246 Ark. 268, 438 S. W. 2d 41; *Moore, Adm'x., et al* v. *Robertson,* 244 Ark. 837, 427 S. W. 2d 796 (1968).

Appellant next asserts for reversal that the evidence is deficient as to proximate causation. We said on first appeal:

> From the evidence in this case, we are forced to the view that only by conjecture and speculation could it be said that appellee's decedent was or was not alive when this second impact occurred and that negligence on the part of appellant was a proximate or contributing cause of the death.

On remand, appellee adduced from the testimony of four doctors that the decedent was "medically alive" at the time of the second collision. However, none of the doctors could or would give an opinion as to which impact caused what injuries. Appellant therefore argues that it was still mere conjecture and speculation for the jury at the second trial to have found that his negligence was a proximate or contributing cause of the decedent's death because fatal injury was not shown to have resulted from the collision between the Dodge and the Corvair.

We cannot agree with appellant's reasoning. At the second trial appellee adduced additional evidence. Dr. Robbins, an expert physicist whose qualifications are admitted, testified regarding the physical dynamics of the accident. After studying photographs of the damaged vehicles and determining the angles of the two impacts in the context of a hypothetical reconstruction of the multiple collision, Dr. Robbins stated with reasonable scientific certainty that the initial impact against the oncoming white Pontiac halted the forward motion of decedent's Corvair and displaced its momentum into a counterclockwise rotation which resulted in the positioning of its frontal left portion in the path of appellant's blue Dodge. He further noted, again as a matter of reasonable scientific certainty based on the law of physics, that "the left front door of the red Corvair would move in a circle which would move it away from the line of action of this oncoming car, this white car," and therefore that the decedent's face never came closer to the Pontiac than it was at the instant of the initial impact. This expert testimony demonstrated that the severe damage to the left portion of the Corvair—the crushed-in side, dislocated driver's seat and bent steering shaft and wheel—resulted from the second impact, a conclusion which was further substantiated in that fragments of blue paint were found imbedded in the crushed left side of the red Corvair.

Since there was medical evidence that death resulted from "brain injury and internal injuries," the jury certainly had substantial evidence, by virtue of Dr. Robbins' testimony, that appellant's negligence was a proximate or contributing cause of the fatal injuries. In view of the testimony of the physicist, it is highly improbable that the decedent suffered any brain injury as a result of the first impact. In a somewhat similar case, *Lester* v. *Rose*, 130 S. E. 2d 80 (W. Va. 1963), it was aptly said:

The plaintiff's decedent's death was caused from injuries to her head as a result of the accident. If she received injuries to the front of her head as a result of the Rose truck striking the truck in which

she was riding, and severe injuries to the back of her head as a result of the defendant Blankenship's automobile striking the rear of the truck in which she was a passenger, which there is evidence in this case to support, both the defendant Rose and the defendant Blankenship would be guilty of negligence which proximately caused or contributed to the death of plaintiff's decedent, and although the evidence may be conflicting, it is a case for jury determination, and in such a case a jury verdict will not be disturbed if there is sufficient evidence to support it.

See, also, *Leinbach* v. *Pickwick Greyhound Lines*, 135 Kan. 40, 10 P. 2d 33 (1932); and *Horvath* v. *Tontini*, 126 Conn. 462, 11 A. 2d 846 (1940).

It is apparently appellant's position also that appellee can recover only upon specifically delineating the precise injuries proximately caused by the second impact. Such a requirement is unrealistic. The problem of proving proximate causation and delineating the injuries from the respective causes in multiple collision cases has long perplexed the courts of many jurisdictions. See 100 ALR 2d 1—170 (1965). Our case precedent requires that proof of proximate or contributory causation go beyond mere conjecture or choice of possibilities. See *Woodward* v. *Blythe, supra,* and cases cited therein. Our prior case law, however, also establishes that "[w]here, although concert is lacking, the separate and independent acts of negligence combine to produce directly a single injury, each is responsible for the entire result, even though his act or neglect alone might not have caused it." *Southwestern Gas & Elec. Co.* v. *Godfrey*, 178 Ark. 103, 10 S. W. 2d 894 (1928). See, also, *Brown* v. *Stair*, 227 Ark. 757, 301 S. W. 2d 16 (1957); *Lydon, et al* v. *Dean*, 222 Ark. 367, 260 S. W. 2d 465 (1953); Ark. Stat. Ann. § 34-1001 et seq (Repl. 1962). If proof of the precise damage proximately caused by each tort-feasor were nonetheless required, as appellant seems to insist, then joint and severable liability would be an unnecessary luxury for a plaintiff since by so proving proximate cause he

would simultaneously be apportioning damages among the tortfeasors and thereby limiting his recovery in accordance therewith.

The trend in this area of the law is not so exacting of injured plaintiffs to the benefit of wrongdoing defendants. In 7 Am. Jur. 2d, Automobiles and Highway Traffic, § 370, it is stated:

> Separate and distinct but concurrent negligent acts of travelers causing injury to a third person are each regarded as the proximate cause of his injury * * *.

The Restatement of the Law of Torts, § 879, reads:

> [E]ach of two persons who is independently guilty of tortious conduct which is a *substantial factor* in causing a harm to another is liable for the entire harm in the absence of a superseding cause. [emphasis added]

Of like import is 38 Am. Jur., Negligence, § 257:

> According to the great weight of authority, where the concurrent or successive negligent acts or omissions of two or more persons, although acting independently of each other, are, in combination, the direct and proximate cause of a single injury to a third person, and it is impossible to determine in what proportion each contributed to the injury, either is responsible for the whole injury, even though his act alone might not have caused the entire injury, or the same damage might have resulted from the act of the other tortfeasor, and the injured person may at his option or election institute suit for the resulting damages against any one or more of such tortfeasors separately, or against any number or all of them jointly.

See, also, Prosser on Torts, § 45 (2d ed. 1955) and I Cooley, Torts, § 86 (4th ed. 1932). These authorities effectively refute appellant's position as we understand it.

It is interesting to note that some jurisdictions have extensively minified or even completely eliminated the requirement of proving proximate causation in factual situations similar to the case at bar. In *Hackworth* v. *Davis,* 390 P. 2d 422 (Idaho 1964), although medical testimony could not establish which of two impacts caused the fatal injuries or even if the decedent was alive at the time of the second impact, the court nonetheless held that the driver whose negligence occasioned the second collision was subject to joint and severable liability. It was stated in *Gibson* v. *Bodley,* 156 Kan. 338, 133 P. 2d 112 (1943), that:

> The doctrine of proximate cause does not apply as between an innocent third party and joint tortfeasors where the negligent acts of the respective tortfeasors were substantially concurrent or successive and the negligence of each of them contributed directly to produce the injury, without the occurrence of any new and independent force or intervening efficient cause to break connection between such acts.
>
> \* \* \*
>
> In such circumstances the degree of culpability of each is immaterial and each is liable for the entire damage.

In *Copley* v. *Putter,* 93 Cal. App. 2d 453, 207 P. 2d 876 (1949), it was held that the burden is upon each of the tort-feasors "to absolve himself if he can." The court noted:

> It would be a frustration of justice for the wronged person to be permitted to show his injury and the simultaneous negligence of the two tortfeasors and be required to demonstrate which of the two had caused the damage.

See, also, *Maddux* v. *Donaldson,* 362 Mich. 425, 108 N. W. 2d 33 (1961); and *Summers* v. *Tice,* 33 Cal. 2d 80, 199 P. 2d 1 (1948).

In the circumstances of the case at bar, however, appellee clearly met her burden of proof by establishing appellant's negligence and that his negligence, combined with that of another concurrent tortfeasor, was a proximate or contributing cause of a single injury.

It is next contended that the trial court erred in permitting Dr. Robbins, appellee's expert witness in the field of physics, to testify over the objections of appellant. The law in this regard is clear. Because of the impossibility of establishing with certainty the many factors that must be taken into consideration, attempts to reconstruct traffic accidents by means of expert testimony are viewed with disfavor; and, in the absence of anything to indicate that it was beyond the jurors' ability to understand the facts and draw their own conclusions, such expert testimony is not admissible. *Reed v. Humphreys*, 237 Ark. 315, 373 S. W. 2d 580 (1963); *Missouri Pacific R. R. Co.* v. *Barry*, 172 Ark. 729, 290 S. W. 942 (1927). In the case at bar, however, the testimony of Dr. Robbins was necessary for an understanding by the jurors of the physical dynamics and causal relationships involved in the accident. See, *e. q., Lester v. Rose, supra.*

Appellant also argues for reversal that the trial court erred in giving an incomplete version of AMI 902, the "superior right to use of the highway" instruction. Since this very same instruction was given at the initial trial over appellant's objection and not complained of upon first appeal, the law of the case again must be applied, and we are precluded from considering it now for the first time. *Moore, Adm'x, et al* v. *Robertson, supra.*

Finally it is urged by appellant that the judgment against him can in no event exceed the amount assessed against Johnson, the concurrent tort-feasor, in the first trial of this case. We do not agree. In cases such as the present where concurrent negligent acts result in a single injury, each tortfeasor is jointly and severably liable, and a plaintiff can institute an action against any or all

tortfeasors, individually or jointly. *Coleman* v. *Gulf Refining Co. of Louisiana,* 172 Ark. 428, 289 S. W. 2 (1927); *Cahill* v. *Bradford,* 172 Ark. 69, 287 S. W. 595 (1926). If the suits are brought individually, they may, and usually do, result in inconsistent judgments since it is unlikely that two distinct juries will assess exactly the same damages. The present situation is tantamount to two individual trials. The first trial resulted in a judgment only against Johnson for $137,000 since appellant alone appealed and gained a reversal. The second trial resulted in a judgment against appellant for $150,-000. Under our Uniform Contribution Among Tortfeasors Act [Ark. Stat. Ann. §§ 34-1001—1009 (Repl. 1962)], satisfaction of either judgment entitles the tortfeasor against whom it is had to contribution from the other, although it does not discharge the other tortfeasor from liability to appellee. However, appellee's first satisfaction must be credited to any subsequent satisfaction which he seeks. *Smith* v. *Tipps Engineering & Supply Co.,* 231 Ark. 952, 333 S. W. 2d 483 (1960).

Appellant cites to us *Southwest Gas & Elec. Co.* v. *Godfrey, supra,* to support his contention that he is in no event liabile for more than $137,000. That case is distinguishable. There, both concurrent tortfeasors were tried together before a single jury, and the jury, *in an attempt to apportion damages,* returned a verdict of $4,000 against one and $14,000 against the other. Since the defendants were jointly and severably liable for the single injury, there could only be one recovery. Inasmuch as the defendant against whom the lower verdict was rendered was liable for the whole amount, there could be no greater recovery against either or both of the tortfeasors than the lower sum assessed by the jury. The joint and severable liability of both concurrent tortfeasors was, therefore, held to be $4,000. See *Wear-U-Well Shoe Co.* v. *Armstrong,* 176 Ark. 592, 3 S. W. 2d 698 (1928). Also, see *Consequences of Proceeding Separately Against Concurrent Tortfeasors,* 68 Harv. L. Rev. 697 (1955). In the case at bar, however, there was no attempted apportionment of liability between the tortfeasors. Two different juries simply arrived at two dif-

ferent verdicts, each representing the respective jury's assessment of appellee's total damages.

Affirmed.

JONES & BYRD, JJ., dissent, FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN, Justice, concurring. I agree with the result reached in the majority opinion and with what I take to be the real reasons for reaching it. On the question of liability, it should be noted that the court has not yet embraced the doctrine that proof of proximate causation by a plaintiff in this or a similar factual situation should be eliminated, and that parties jointly sued must become adversaries sharing a burden not specifically placed upon one or the other. The opinion demonstrates that there is ample authority based upon sound logic for the result on this point.

The real purpose of this opinion is to express my point of view as to the treatment of certain precedents which I consider to be valid, binding and correct. I refer particularly to *Southwestern Gas & Elec. Co. v. Godfrey,* 178 Ark. 103, 10 S. W. 2d 894. The *Godfrey* court did say that relative degrees of fault were immaterial in a case such as this. It held that since there was only one injury, each joint tort-feasor whose independent negligence contributed to the resulting damage was liable for the whole damage, so that there could be no greater recovery than the smallest amount of damages arrived at by the same jury in separate verdicts. This result is logical because there cannot be two separate measures of the damages. See also *Nowlin-Carr Co. v. Cook,* 171 Ark. 51, 283 S. W. 7.

To this extent, in spite of the broad language of the opinion in *Shultz v. Young,* 205 Ark. 533, 169 S. W. 2d 648, the holding in *Godfrey* is and should be unimpaired. The only effect of the Uniform Contribution among Tort-feasors [Ark. Stat. Ann. §§ 34-1001—1009 (Repl. 1962)] was to permit the apportionment of damages between multiple tort-feasors solely for the

purpose ot determining rights of contribution among them. See Act 315 of 1941; 9 U. L. A. 235 and Commissioners' Note, p. 236. Any question, which might have resulted from the broad language of the *Shultz* court, was completely laid to rest by the General Assembly by Act 35 of 1949.

Subsequent to our adoption of the Uniform Contribution Act, we have approved apportionment of damages, even in cases where the jury was not specifically instructed in that regard. See *Wheaton Van Lines, Inc. v. Williams,* 240 Ark. 280, 399 S. W. 2d 258.[1] The court made it quite clear that its holding did not mean that where the damages were apportioned, a plaintiff could not recover the full amount of its damages from any one of the joint tort-feasors.

The verdict in the first trial was a joint one, even though the forms of verdict submitted would have permitted separate ones. Even so, both Johnson and Woodward were severally as well as jointly liable to appellee since the jury found them to be joint tort-feasors, and the judgment was so entered. The several liability of the individual tort-feasors was not affected by the contribution act. *Dunaway* v. *Trout,* 232 Ark. 615, 339 S. W. 2d 613. But this judgment was reversed as to appellant and the cause remanded for a new trial. Insofar as the parties here were concerned, the case stood as if no action whatever had been taken. They were restored to the same condition as they were before the first judgment was rendered. That judgment, insofar as they are concerned, became a nullity. *Palmer* v. *Carden,* 239 Ark. 336, 389 S. W. 2d 428. Still the judgment against Johnson, who did not appeal, was not in anywise affected by the reversal insofar as appellee and Johnson are concerned. *Rook* v. *Moseley,* 236 Ark. 290, 365 S. W. 2d 718. But as between appellee and appellant, their controversy was subject to retrial on all issues. *Callaway* v. *Cherry,* 229 Ark. 297, 314 S. W. 2d 506. One of these

---

[1]The forms of verdict in this case indicated separate verdicts, but not a joint one, as the forms gave the jury no opportunity to find against the defendants jointly.

issues was the amount of damages. Since there is no privity between Johnson and Woodward and no possibility of any vicarious or derivative liability, the amount of damages awarded in the first trial should not be a limit, either maximum or minimum, on the amount of damages awarded by a jury in a new trial.

Of course, no question as to the rights of Johnson and Woodward, as between them, is now before us.