Dennis **DAVIS** and Vicki Davis, His Spouse, Plaintiffs,

v.

**DuPONT; Sherwin–Williams; and PPG Industries, Defendants.**

**Civ. No. LR–C–88–672.**

United States District Court, E.D. Arkansas, W.D.

Dec. 14, 1989.

Edward O. Moody, Little Rock, Ark., for plaintiffs.

Wm. E. Gordon, Jr., DuPont Co., Wilmington, Del., and James M. Moody, Little Rock, Ark., for DuPont.

J. Kevin Lundholm, Sherwin–Williams Co., Cleveland, Ohio, and Donald H. Bacon, Little Rock, Ark., for Sherwin–Williams.

Overton S. Anderson, Little Rock, Ark., for PPG Industries.

MEMORANDUM AND ORDER

EISELE, Chief Judge.

Plaintiff brought this lawsuit alleging that he sustained injuries as a result of his exposure to defendants' products. Pending before the Court is the motion for

summary judgment filed by defendant E.I. du Pont de Nemours & Company. The motion has been adopted by separate defendants Sherwin–Williams and PPG Industries. Defendants argue they are entitled to judgment as a matter of law because plaintiff can produce no evidence to establish a causal link between plaintiff's injury and any product manufactured by the defendants. For the reasons set forth below, the motion will be granted and the case dismissed.[1]

### Facts

The complaint in this action alleges that the plaintiff, Mr. Dennis Davis worked for approximately twenty-five years at various automobile paint and body repair shops in Texas, Louisiana and Arkansas. In 1985, plaintiff was diagnosed as suffering from chronic hepatitis and as a result of this condition is permanently disabled. Mr. Davis contends his illness developed as a result of his exposure to toxic fumes and dust while using various unspecified paint products manufactured by the defendants, and sold to Mr. Davis' employers. The complaint lists a variety of theories of recovery including breach of warranties, negligence and strict products liability.

Precisely which of defendants products are alleged to have caused plaintiff's injury remains unknown. During his deposition, plaintiff stated that his employers used paints, lacquers, thinners and other solvents produced by all three defendants as well as other manufacturers not named in this suit. At one point in his deposition, Mr. Davis opined that: "DuPont I probably used the most, Sherwin Williams [sic] I used the second most, and PPG the third." Deposition of Dennis Davis at p. 190. Plaintiff, however, did not identify any specific products used, with the exception of a rubbing compound known as "White Lightning" that is produced by defendant Sherwin–Williams. *Id.*

Moreover, plaintiff has not specifically identified which ingredients or chemical compounds within any of the defendants' products are alleged to have caused his liver injury. In response to interrogatories requesting this information, plaintiff provided the following list of chemicals: "Toulene, acetone, methyl-ethyl-ketone, styrene, xylene, lead and other components of the paints and solvents."

In response to the pending motion, plaintiff points to a Material Safety Data Sheet (MSDS) published by defendant duPont for one of its products known as "Centari Acrylic Enamel", which does in fact contain many of the ingredients listed in plaintiff's interrogatory response. Section V of the MSDS entitled "Health Hazard Data" also states in part that "[r]ecurrent exposure to [toulene and xylene] may result in liver and kidney injury." Plaintiff's Exhibit F.

The duPont MSDS was published in April 1987, sometime after Mr. Davis stopped working in automotive body repair shops. Separate defendant PPG Industries argues that the document cannot be considered for the purposes of the pending motion because it would constitute evidence of a subsequent remedial measure barred by Federal Rule of Evidence 407, which prevents the admission of such evidence "to prove negligence or culpable conduct". The Court notes that the Eighth Circuit has held Rule 407 applicable in strict products liability cases where, as here, plaintiff alleges that defendants failed to provide adequate warnings of a product's defect, or inherent danger. *See DeLuryea v. Winthrop Laboratories*, 697 F.2d 222 (8th Cir. 1983). However, the evidence is being presented not necessarily to prove negligence, but rather as an admission of duPont that these chemicals have been linked with the type of injury suffered by Mr. Davis. Moreover, it is not necessary for a nonmoving party to "produce evidence in a form that would be admissable at trial."

---

1. The ruling here renders moot the discovery motion filed by defendant duPont on November 16, 1989 and adopted by Sherwin–Williams on November 20th. This Court earlier entered an order granting defendant PPG's motion to compel and request for costs and fees. The Court directed the parties to confer and determine an appropriate award, or one would be entered by the Court. Counsel for the plaintiffs now informs the Court that defendant's fees and costs have been paid as per the petition filed by counsel for PPG.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Assuming plaintiff could produce admissable evidence of such an admission, the duPont MSDS still does not establish causation. Plaintiff does not allege that he ever came in contact with "Centari Acrylic Enamel", much less received recurrent exposure to its ingredients. Moreover, the MSDS has no significance as to the claims brought against the other two defendants. Plaintiff has not come forward, for instance, with any evidence concerning the ingredients of defendants Sherwin–Williams' product "White Lightning."

Finally, plaintiff has not come forward with any medical expert opinion that would assist in establishing causation. Although plaintiff's expert Dr. Swan Thung, a liver pathologists, will testify that "Mr. Davis' liver disease is a chronic toxic hepatitis due to chronic exposure to toxic fumes," Dr. Thung is apparently unable to testify with any degree of medical certainty that the products manufactured by the defendants caused plaintiff's injury. Plaintiff's Exhibit G. At her deposition, Dr. Thung testified as follows:

> Q: What types of liver injury does [Mr. Davis] have?
>
> A: He has severe steatosis which is fatty degeneration. He has fibrocysis which means laying down of connective tissue within the porta tract....
>
> Q: Is it your opinion that that is caused by what, Ma'am?
>
> A: As I said, I can only go so far as a toxic agent.
>
> Q: You don't know what toxic agent?
>
> A: No.
>
> Q: Do you know where he might have been exposed to that toxic agent?
>
> A: No.
>
> Q: Do you know under what circumstances he may have been exposed to that toxic agent?
>
> A: No.

Deposition of Dr. Thung at pp. 60–61.

### Summary Judgment Standards

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment may be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."

In *Celotex Corp. v. Catrett, supra,* the Supreme Court held that Rule 56(c) mandates entry of summary judgment "against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* 477 U.S. at 322, 106 S.Ct. at 2552. "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554. *See also City of Mt. Pleasant v. Associated Electric Cooperative, Inc.,* 838 F.2d 268, 273–74 (8th Cir.1988).

Once a party has carried its burden under Rule 56, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted). "[T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) the Supreme Court stated that at the summary judgment stage, the role of the district court is not to weigh the evidence and determine its truth, but rather to determine whether there is any genuine issue for trial.

> There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249, 106 S.Ct. at 2511 (citations omitted).

Although plaintiff raises several theories of recovery, an essential element of each is causation. Arkansas' strict products liability statute provides that a manufacturer who supplies a product "in a defective condition which rendered it unreasonably dangerous" will be liable for damages if "the defective condition was a proximate cause of the harm to person or to property." Ark.Code.Ann. § 4–86–102(a).

Similarly, the Arkansas Product Liability Act, Ark.Code.Ann. §§ 16–116–101 *et seq.*, provides that actions may be brought "for or on account of personal injury ... caused by, or resulting from, the manufacture, construction, design, formula, preparation ... warning, instruction, marketing ... or labeling of any product." Ark.Code.Ann. § 16–116–102(5).

It is also well settled that under a negligence claim a plaintiff has the burden of proving by a preponderance of the evidence not only that the defendant was negligent, "but also that the negligence was a proximate cause of the injuries complained of." *Ellsworth Brothers Truck Lines v. Canady,* 245 Ark. 1055, 1057, 437 S.W.2d 243 (1969). Alternative theories of liability that minimize or eliminate the need to prove causation such as market share or concert of action have not found their way into Arkansas jurisprudence. *See Woodward v. Blythe,* 249 Ark. 793, 800–01, 462 S.W.2d 205 (1971).

In the present case, plaintiff has not come forward with any evidence that would establish a causal link between his injury and any product manufactured by the defendants. What is known is that plaintiff suffers from some liver ailment; that he worked for several years in an environment that would likely expose him to a variety of toxic fumes; that he used products manufactured by the defendants as well as other manufacturers who are not parties to this suit; and that ingredients in one of separate defendant duPont's products has admittedly been linked to liver damage. What plaintiff has failed to show in responding to the present motion, is some evidence that would tend to prove that plaintiff had been exposed to those toxic agents, and some medical evidence that his condition has been caused by that exposure.

The facts here are very similar to those in *Celotex* where the Supreme Court upheld the district court's grant of summary judgment where plaintiff had failed to come forward with evidence that could establish exposure to defendant's products. *Id.* 477 U.S. at 319–20, 106 S.Ct. at 2550–51. *See also Klein v. Council of Chemical Associations,* 587 F.Supp. 213 (E.D.Pa. 1984) (Complaint alleging negligence, strict products liability and breach of warranties dismissed where plaintiff could not name the specific products to which he had been exposed that allegedly caused his injury). Without some evidence that would tend to establish defendants' products as a cause of plaintiff's injury, he cannot maintain any cause of action and the complaint must be dismissed.

IT IS, THEREFORE, ORDERED that defendants' motion for summary judgment be, and it is hereby, granted and the case dismissed.