CITIZENS COACH COMPANY *v.* WRIGHT.

5-1476                                                313 S. W. 2d 94

Opinion delivered May 5, 1958.

[Petition to clarify opinion denied June 2, 1958]

*Rose, Meek, House, Barron & Nash,* for appellant.

*Talley & Owen* and *James R. Howard,* for appellee.

ED. F. McFADDIN, Associate Justice. The appellant, Citizens Coach Company (hereinafter called "Coach Company") is a corporation engaged as a common carrier in operating a transportation system in the City of Little Rock. The appellee, Mrs. Freeda Wright, while a passenger on a bus of appellant, was assaulted by an-

other passenger named Dorothy Payne. Mrs. Wright filed this action for damages against Dorothy Payne, for assault and battery, and against the Coach Company for its failure to accord Mrs. Wright the degree of safety and protection to which a passenger is entitled from a common carrier.

A jury trial resulted in these verdicts for Mrs. Wright for which judgments were entered: (a) against Dorothy Payne for actual damages of $500.00; (b) against Dorothy Payne for punitive damages of $1,000; (c) against Citizens Coach Company for actual[1] damages of $5,000. The Coach Company is the only appellant and there is no cross appeal; so the only question before us is the correctness of the judgment for actual damages of $5,000 against the Coach Company. Among others, these points, now to be discussed, are presented by the Coach Company.

I. *Sufficiency Of The Evidence.* The Coach Company claims that the evidence is insufficient to sustain *any verdict* against it in favor of Mrs. Wright. Viewing the evidence in the light most favorable to the verdict, as is our rule in cases like this one,[2] it appears that Mrs. Wright and Dorothy Payne were both passengers on one of the appellant's buses. Some question arose as to seats. Dorothy Payne called Mrs. Wright several ugly names; then later kicked Mrs. Wright, shoved her backwards, and otherwise assaulted her. Mrs. Wright testified that once while the cursing was taking place, and prior to the actual physical assault, the bus driver looked at the parties but did nothing further, and that it was several minutes later before the actual physical attack occurred. Here is Mrs. Wright's testimony as to the inaction of the bus driver:

"Once when she was cursing me, he (bus driver) turned his head halfway around because I was expecting him to say something to her then, but he didn't. He

---

[1] The Trial Court did not submit to the jury any question of punitive damages against the Coach Company, and there is no complaint about such failure.

[2] See *Life & Cas. Co.* v. *Kinney*, 206 Ark. 804, 177 S. W. 2d 768; *Rexer* v. *Carter*, 208 Ark. 342, 186 S. W. 2d 147; and *Ark. P. & L. Co.* v. *Connelly*, 185 Ark. 693, 49 S. W. 2d 387.

never moved from his seat or never said a word, but he did turn halfway around once and that is when I thought he was going to stop her."

We have a number of cases stating the duty of the carrier to protect a passenger from assault or injury from other passengers. One such case is *Hines* v. *Rice,* 142 Ark. 159, 218 S. W. 851, and in that case our earlier cases are cited. The case of *Ark. P. & L. Co.* v. *Steinheil,* 190 Ark. 470, 80 S. W. 2d 921, involved a street railway as a common carrier. There a passenger brought an action against the carrier for damages because of injuries received from another passenger; and, in stating, the duty of the carrier, Justice Frank G. Smith said:

"Appellee quotes from the chapter on Carriers in 4 R. C. L., §§ 606, 607, and 608, as correctly declaring the law applicable[3] to the facts of this case; and we concur in that view. It was there said that a carrier owes to its passengers the duty of protection from the violence and insults of other passengers or strangers, so far as this can be done by the exercise of a high degree of care, and will be held responsible for its own or its servants' negligence in this particular, when, by the exercise of proper care, the act of violence might have been foreseen and prevented. That the negligence for which, in case of an injury to a passenger by a fellow-passenger or a stranger, the carrier is held liable, is not the tort of the fellow-passenger or stranger, since there is no such privity between the carrier, and such tort-feasors as to make the carrier liable, on the principle of *respondeat superior;* but it is the negligent omission of the carrier, through its servants, to prevent the tort from being committed which renders the carrier responsible. That the negligent failure of the servants of a carrier to prevent the commission of the tort being the basis of the action, it follows that for this omission or failure to be actionable negligence there must be a failure or omission to do something which should have been done by the servant, and there is, therefore, involved the essential

---

[3] While the text in Am. Jur. is not identical with that in R.C.L., nevertheless the same general rules appear in 10 Am. Jur. "Carriers" §§ 1439, 1440, and 1441.

ingredient that the servant had knowledge, or with proper care, could have had knowledge, that the tort was imminent, and that he had that knowledge, or had the opportunity to acquire it, sufficiently long in advance of its infliction to have prevented it with the force at his command; . . .''

In the Steinheil case, it was held that the carrier was not liable because the injuries had already been sustained by the passenger before the carrier's servant learned or could have learned of the affray. But in the case at bar there is evidence, as previously stated, from which the jury could well have concluded—as it apparently did—that after the bus driver saw and heard the disturbance he did nothing to protect Mrs. Wright from the assault and battery subsequently afflicted on her by Dorothy Payne. Therefore, because of the testimony previously recited, and other in the record, we conclude that the evidence was sufficient to take the case to the jury and to support a verdict for some amount.

II. *The Coach Company's Request For Judgment Non Obstante Veredicto.* In this assignment the Coach Company says: *"The verdict against the Citizens Coach Company, particularly insofar as it exceeds the amount assessed against Dorothy Payne for actual damages, is a mistake which should be corrected."*

As heretofore mentioned, the jury rendered these verdicts: "We, the jury, find in favor of the plaintiff against Citizens Coach Company and assess her damages as follows: Actual Damages $5,000." "We, the jury, find in favor of the plaintiff against Dorothy Mae Payne and assess her damages as follows: Actual Damages, $500.00; Punitive Damages, $1,000; Total, $1,500." The Coach Company moved that the judgment against it be for $500.00 actual damages *non obstante veredicto.* The Court refused the motion; and that is the assignment that we now consider.

A considerable portion of the brief of the appellant is devoted to the argument, that where separate verdicts are rendered against joint tortfeasors, the Court must

enter judgment for the lower verdict. Appellant discusses in detail the old cases of *Spears* v. *McKinnon,* 168 Ark. 357, 270 S. W. 524; *Wear-U-Well Shoe Co.* v. *Armstrong,* 176 Ark. 592, 3 S. W. 2d 698, and *S. W. Gas & Elec. Co.* v. *Godfrey,* 178 Ark. 103, 10 S. W. 2d 894. Appellee says that the rule of these cases is changed by Act 315 of 1941; which is the Uniform Contribution Among Tortfeasors Act (§§ 34-1001 *et seq.* Ark. Stats.); and appellee says that our case of *Shultz* v. *Young,* 205 Ark. 533, 169 S. W. 2d 648, allows apportionment of judgments against joint tortfeasors.

Appellant cites and discusses our case of *Little* v. *Miles,* 213 Ark. 725, 212 S. W. 2d 935, in which we held that the smallest verdict against any of the joint tortfeasors must be entered as the judgment against the others. Appellee counters that case by calling attention to Act 35 of 1949, which it is claimed was enacted[4] to overcome the effect of our holding in *Little* v. *Miles.*

We find it unnecessary to decide as between arguments on the point as just mentioned. Assuming that the purpose of the 1949 Act was to allow full apportionment among joint tortfeasors, and assuming that Dorothy Payne and the Coach Company are joint tortfeasors in the case at bar, nevertheless, we reach the conclusion that the verdict against the Coach Company is grossly excessive, when considered in the light of the fact that the verdict against Dorothy Payne was for only $500.00 actual damages. The defendant, Dorothy Payne, was a malfeasor;[5] and the Coach Company was a nonfeasor.[6]

As pointed out in Section I of this opinion, the Coach Company, as a common carrier, was liable for failure, after reasonable notice, to protect Mrs. Wright from damage inflicted on her by Dorothy Payne. The verdict finds that the Coach Company failed to afford such pro-

---

[4] In this connection, see the discussion on Act 35 of 1949 as found in 3 Ark. Law Review, page 371.

[5] Black's Law Dictionary defines malfeasance as ". . . the commission of some act which is positively unlawful; the doing of an act which is wholly wrongful and unlawful . . ."

[6] Black's Law Dictionary defines nonfeasance as "Nonperformance of some act which ought to be performed; omission to perform a required duty . . ."

tection. Because of such failure (nonfeasance) the Coach Company is liable for whatever damages Dorothy Payne inflicted on Mrs. Wright. Dorothy Payne committed an assault and battery (malfeasance) on Mrs. Wright, which might not have occurred if the Coach Company had not been guilty of nonfeasance. It is impossible for us to see how the failure of the Coach Company to protect Mrs. Wright could have caused more damage to Mrs. Wright than the actual damage[7] that Dorothy Payne inflicted on Mrs. Wright. The jury found that the actual damages inflicted on Mrs. Wright by Dorothy Payne amounted to $500.00; and against that verdict there has been no appeal. We cannot see how the actual damages against the Coach Company (the nonfeasor) can possibly exceed the actual damages against the malfeasor.[8]

In cases of derivative liability many States hold that the finding of nonnegligence against the principal actor is a protection against the person sought to be held derivatively liable.[9] Our own case of *Patterson* v. *Risher*, 143 Ark. 376, 221 S. W. 468, looks in that direction. See also Annotation in 141 A. L. R. 1168; and see 52 Am. Jur. "Torts," § 125. While the liability of the Coach Company in the case at bar is not *derivative*, still it somewhat resembles derivative liability because the Coach Company was guilty of nonfeasance in failing to exercise due care to protect a passenger from the malfeasance (assault) committed by another passenger; and there is no reason for assessing actual damages for nonfeasance greater than the actual damages assessed for the resulting malfeasance. See 52 Am. Jur. "Torts" §

---

[7] No punitive damages were returned against the Coach Company; so we do not consider that issue. Of course, if the punitive damages had been assessed against the Coach Company, then a different situation might be presented.

[8] There is a line of cases in Arkansas which holds that the corporation may be liable for damages even when its employee is absolved; but these cases are based on the distinction between contributory negligence and comparative negligence; and nothing in the present opinion affects in any way the holding in such cases as *Mo. Pac.* v. *Morrison*, 186 Ark. 689, 55 S. W. 2d 933; and *Miss. River Fuel Corp.* v. *Senn*, 184 Ark. 554, 43 S. W. 2d 255.

[9] In *Davis* v. *Perryman*, 225 Ark. 963, 286 S. W. 2d 844, our opinion was based on *res judicata* rather than on the theory of derivative liability.

125. The verdict against the malfeasor for actual damages was $500.00; and the verdict against the Coach Company for any amount greater than $500.00 is grossly excessive and should be reduced to the amount of the actual damages committed by the malfeasor.

III. *Trial Court's Ruling On The Admission Of Evidence.* There is an assignment made by the appellant which we now mention in order to clearly indicate that we are not ruling on the point; and it relates to the admission of certain evidence. Mrs. Wright did not see fit to call any doctor in order to establish the nature and extent of her injuries. Instead, she offered in evidence the reports of the Arkansas Baptist Hospital. She claimed that under Act 293 of 1949 these reports were admissible to establish the nature and extent of her injuries. The appellant objected to these reports, contending that Act 293 of 1949 does not allow medical symptoms and maladies to be shown by nurses' reports on hospital records;[10] and in arguing the point here appellant cites, *inter alia*, the following cases: *Shearman Concrete Pipe Co.* v. *Wooldridge*, 218 Ark. 16, 234 S. W. 2d 382; and *National Life & Accident Ins. Co.* v. *Threlkeld*, 189 Ark. 165, 70 S. W. 2d 851.

We have grave doubts as to the correctness of the ruling of the Trial Court on the point here at issue. But it is not necessary for us to decide the question because appellant has stated that if it prevails on the second point (that is, judgment *non obstante veredicto*) then appellant is willing to forego this assignment. Therefore, since we have sustained the appellant on the *non obstante veredicto* point, it becomes unnecessary to decide the question as to the admission of the evidence.

---

[10] See 3 Ark. Law Review 359 for discussion of this Act No. 293.

## *CONCLUSION*

The judgment against the Citizens Coach Company for $5,000 is reversed and the cause is remanded with directions that the Trial Court set aside its judgment against the Coach Company for $5,000 and enter the judgment against the Coach Company for $500.00 as actual damages. All costs of the Trial Court are assessed against the Coach Company: all costs of the appeal are assessed against the appellee.

MILLWEE and ROBINSON, JJ., would affirm the judgment in its entirety.

GEORGE ROSE SMITH, J., not participating.

## ORDER PER CURIAM OF JUNE 2, 1958

"Appellant's motion to clarify the opinion is denied. Even though appellant's motion may be premature, nevertheless we point out that the judgments are several, and under the facts in this case the appellant will not be entitled to any judgment over against Dorothy Payne."