Argued June 5, affirmed July 6, 1962

## GROSS *v.* WILEY

373 P. 2d 421

*Charles S. Crookham,* Portland, argued the cause for appellant. With him on the briefs was William Gehlen, Stayton.

*Orval Thompson,* Albany, argued the cause for respondent. On the brief were Weatherford & Thompson, Albany.

Before McAllister, Chief Justice, and Rossman, Goodwin and Lusk, Justices.

## GOODWIN, J.

The plaintiff appeals from a judgment entered upon an involuntary nonsuit in an action for damages for injuries received at a public dance hall operated by the defendant.

From the evidence most favorable to the plaintiff, it appears that he was kicked and beaten by one Hedrick. Both had paid for admission to a dance. The altercation took place outside the dance hall, on the porch and grounds. From beginning to end the affair consumed only a few seconds of time. Hedrick knocked the plaintiff down and kicked him. The initial attack was broken up by other patrons. While Hedrick was being led from the scene of combat, he broke away from his escorts and kicked the plaintiff, who was also being escorted toward neutral ground.

It was this second kick which, the plaintiff contends, caused the injuries for which he seeks to recover. The plaintiff argues that the second kick came at a time when the defendant, by reason of Hedrick's first aggression, had notice, actual or constructive, of Hedrick's vicious propensities. The plaintiff then argues that the defendant is liable for failing to protect him from the second attack, even if the first hostilities might have been a surprise to all concerned.

The defendant had three men on duty to keep order. One worked inside the hall; one watched the door; the third devoted most of his attention to the parking lot and other outside premises. There were 334 patrons in attendance. Alcoholic refreshment was available

from several sources outside the hall. Witnesses vaguely described the drinking habits of the patrons. There is little evidence that Hedrick was visibly intoxicated before the attack; witnesses expressed the opinion, formed after the attack, that Hedrick was drunk. The evidence tended to show that the environment in general was not remarkable for the kind of resort under discussion. It was customary for patrons to enter and leave the hall at will. There is, however, no evidence concerning the distribution of patrons within and without the building at any given time. We therefore have nothing before us to support any inference at all concerning the adequacy of the security force at particular times or locations.

We concur in the view of the trial court that the evidence was not sufficient to carry the plaintiff's case to the jury. The altercation was essentially a single transaction. There is no evidence that the defendant's servants, in the exercise of ordinary diligence, should have anticipated Hedrick's first attack upon the plaintiff. The ferocity of this attack was the first cause anyone had to suspect that Hedrick might behave in a manner more primitive than was foreseeable for the time and place. No witness described the interval between the attacks, except to say that it was brief. Thus, there was no showing that the circumstances of Hedrick's first and second kicking of the plaintiff were such as to put the defendant on notice of Hedrick's malignant propensities in time to impose any duty upon the defendant other than that which was imposed by the nature of the defendant's business.

In *Boardman v. Ottinger*, 161 Or 202, 88 P2d 967, we adopted the following rule from Restatement, Torts

§ 348, as a correct statement of the duty owed by the proprietor of a resort of the character involved here:

"A * * * possessor of land who holds it out to the public for entry for his business purposes, is subject to liability to members of the public while upon the land for such a purpose for bodily harm caused to them by the accidental, negligent or intentionally harmful acts of third persons or animals if the possessor by the exercise of reasonable care could have

"(a) discovered that such acts were being done or were about to be done, and

"(b) protected the members of the public by
"( i) controlling the conduct of the third persons, or

"(ii) giving a warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to receive from a public utility."

Comment *c,* which follows the quoted matter, observes that while such a proprietor is not an insurer, he has a duty to police his premises and to employ enough servants to afford reasonable protection. Nothing in the evidence suggests that more servants were necessary to provide reasonable security at the time and place in question.

In the absence of evidence of facts which would have charged the defendant with the discovery contemplated in Section 348 (a), supra, there was nothing to submit to the jury.

Affirmed.