TWIN CITY AMUSEMENT CO., INC. v. SALATER.

5-3093                                                          372 S. W. 2d 224

Opinion delivered November 11, 1963.

*Harry C. Robinson,* for appellant.

*Chowning, Mitchell, Hamilton & Burrow,* for appellee.

JIM JOHNSON, Associate Justice. This is a suit for damages resulting from rock throwing following a rock and roll concert. Appellant, Twin City Amusement Company, Inc., leased Barton Coliseum and adjoining parking areas from the Arkansas Livestock Show Association for the night of April 21, 1961, for the purpose of holding a rock and roll concert. Tickets were sold to the public and both Negroes and Whites attended. Mrs. Joe Felton of Little Rock took a carfull of young teenagers to the concert, including one of her own children. She parked on the Livestock Show grounds near the Coli-

seum. After the show, she was proceeding toward an exit gate with the five or six children in her station wagon when she was forced to stop in a line of vehicles waiting to leave the show grounds. At that point (about two blocks from the gate and three blocks from the Coliseum entrance) two colored youths approached her car and demanded that one or more of the boys sing a rock and roll song and tried to pull the boys out of the station wagon or get into the vehicles themselves. Mrs. Felton and the children screamed and honked to attract help. In the car following Mrs. Felton were several teenagers, including appellee Isaac Salater who was driving his family's automobile. These young men voluntarily went to Mrs. Felton's aid, and a fight ensued with the colored boys. The white boys tried to end the fight, got back into appellees' automobile, locked the doors and closed the windows, but the colored boys began throwing rocks and swinging rocks tied in bandanas, breaking the window and otherwise damaging the car and cutting Isaac deeply across the scalp. Isaac maneuvered his car out of the line of traffic, across a field to an exit gate and reported the incident to a fireman directing traffic, who in turn called the police stationed at the main gate.

Appellee Peter Salater, father of Isaac Salater, filed suit against Twin City Amusement Company, Inc., on April 10, 1962, in Pulaski Circuit Court for damages to his car and for injuries to his son, alleging that such damages and injuries resulted from the negligence of appellant. At trial on February 19, 1963, the jury returned a verdict for Peter Salater for $303.00 for automobile damage and medical expenses, and $750.00 for Isaac's pain and suffering. From the judgment on the verdict comes this appeal. For reversal, appellant contends that the trial court erred in not directing a verdict for appellant because there was no substantial evidence of any negligent act on the part of appellant which proximately resulted in injury to appellees.

The record reveals that appellant's lease was the standard form of lease used by the Coliseum (i.e., the Ar-

208

kansas Livestock Show Association) which provided that the lessor supply, among other things, firemen and policemen for the protection of the public, parking lot attendants, ticket sellers, etc., and the number of such employees was decided by the lessor; the lessor also retained control of the concession stands and reserved the right to expel anyone out of line. For this particular concert, the Coliseum hired ten off-duty police officers and some firemen. In addition there were on-duty policemen present. The testimony is in conflict as to whether there were any disturbances during the performance, the consensus of the testimony is that any threatened disturbance that might have occurred was quickly broken up by officers in the Coliseum. The record is silent as to whether any officers were assigned or were present in the parking areas after the concert other than at the gate and outside the Coliseum entrance.

This appears to be a case of first impression on this type of suit in Arkansas. We have reviewed a number of cases from other jurisdictions, among them *Hawkins* v. *Maine & New Hampshire Theaters Co.*, 132 Me. 1, 164 A. 628; *Whitfield* v. *Cox*, 189 Va. 219, 52 S. E. 2d 72; *Worcester* v. *Theatrical Enterprises Corporation,* 28 Cal. App. 2d 116, 82 P. 2d 68; *Hart* v. *Hercules Theatre Corp.,* 258 App. Div. 537, 17 N. Y. S. 2d 441; *Dickinson* v. *Eden Theatre Co.,* 360 Mo. 941, 231 S. W. 2d 609; *Nash* v. *Stanley Warner Management Corp.* (D. C.), 165 A. 2d 238; *Gross* v. *Wiley,* (Or.), 373 P. 2d 421, and *Stevenson* v. *Kansas City,* 187 Kan. 705, 360 P. 2d 1; as well as various encyclopedias and an excellent annotation, 29 A.L.R. 2d 911, entitled "Liability of owner or operator of theater or other amusement for assault on patron by another patron." We find the duty owed by a proprietor of a place of amusement to his patrons in a case such as this succinctly set out in Restatement, Torts, § 348, as follows:

"A . . . possessor of land who holds it out to the public for entry for his business purposes, is subject to liability to members of the public while upon the land for such purpose for bodily harm caused to them by the

accidental, negligent or intentionally harmful acts of third persons or animals if the possessor by the exercise of reasonable care could have

(a) discovered that such acts were being done or were about to be done, and

(b) protected the members of the public by

(i) controlling the conduct of the third persons, or

(ii) giving a warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to receive . . .''

Restatement, Comment c, following § 348, *supra,* observes that while such a proprietor is not an insurer, he has a duty to police his premises and employ enough servants to afford reasonable protection.

This was a sudden, unexpected and unforeseeable affray. Appellees would, in effect, require appellant to be an insurer of their safety, whereas appellant is in fact required only to exercise reasonable care. A statement in *Stevenson* v. *Kansas City, supra,* is apt:

''To foresee that plaintiff while attending the wrestling matches would be assaulted at the hour of 11:00 p.m. at the particular spot on the particular ramp on the way to the particular rest room in the Memorial Building in Kansas City would indeed require imaginative foresight and such is not the type of foreseeability required under our law. Only the standard of the reasonable and prudent man, . . . is required.''

While it might be desirable and very much in the interests of society to prohibit the type of ''entertainment'' offered in the instant case by requiring the exercise of the highest degree of care by the proprietor, however such a rule could not be imposed without adversely affecting all places of amusement and public gathering. As was said in the *Stevenson* case, *supra:*

''To apply such a high degree of vigilance would make a public amusement impossible because of the ex-

pense of guards, time for searching customers to discover possible weapons, etc.''

Nothing in the evidence suggests that more servants were necessary to provide reasonable security at the time and place here in question, or that more servants could have prevented the affray. Certainly a proprietor is not required to have an attendant, guard or usher for every patron.

In the absence of facts which would have charged appellant with the discovery contemplated in Restatement, Torts, § 348, *supra,* there was nothing to submit to the jury. Since the case has been fully developed, we must therefore reverse and dismiss.

McFADDIN, J., dissents; ROBINSON, J., not participating.

ED. F. McFADDIN, Associate Justice (dissenting). I dissent: I am of the view that a question of fact was made for the jury as to whether the appellant, under the existing conditions, exercised reasonable care to protect its patrons from assault while on the premises. That the Salater boy was a patron and was injured by an assault while on the premises, is thoroughly established. The Salater boy went to the aid of a white lady and her children and thereby incurred the ire of some Negro rowdies, who injured the Salater boy.

The Twin City Amusement Company leased from the Arkansas Livestock Association for a ''rock and roll show'' on the night of April 21, 1961, the Barton Coliseum building and streets adjacent thereto. The duty of the appellant as the operator of the entertainment is clear. In 52 Am. Jur. p. 291, ''Theaters, Shows, Exhibitions, Etc.'' §47, the rule as to the degree of care required of the appellant in this case is stated:

''It is the general rule, of almost universal acceptance, that an owner or proprietor of a theater or public amusement is bound to exercise a degree of ordinary and reasonable care for the safety and protection of his patrons—the degree of care that would be exercised by

an ordinarily careful and prudent man in the same position and circumstance.''

In §52 of the same article the holdings are summarized:

''Liability for Assault of Patron; Acts or Conduct of Third Persons.—One who invites the public to his theater or public amusement owes to all persons who accept the invitation the duty of reasonable care to protect them from assault, abuse, or injury at his hands or those of his servants, employees, or agents. And he is liable to a patron for assault, abuse, or injury suffered by reason of a breach of this duty, even where the assailant was a police officer employed to protect the premises and keep order therein, where the acts complained of were done by the officer in his private, and not his official, capacity. He is also under duty to protect patrons from injury resulting from the acts or conduct of other patrons and third persons, and is chargeable with liability for injuries suffered by reason of such acts or conduct. Thus, it has been held that the owner or proprietor of a bathing resort is bound to protect his patrons from injury caused by the conduct of other patrons or his own employees. And the manager of a place of public amusement who sells to a patron intoxicating liquors until he becomes drunk and disorderly, knowing that in such condition he may assault others without cause or provocation, is bound to protect other patrons, and for failure to do so is liable to another patron who is assaulted and injured by the drunken patron.''[1]

The Twin City Amusement Company could not delegate to the Livestock Association or any other person or group of persons the duties that the Twin City Amusement Company owed to its patrons, as above stated. The duties were absolute. The evidence showed that the purpose of the entertainment was a ''rock and roll show'' at which both white people and Negroes were in attendance. The Salater boy testified:

---

[1] Annotations on various points in the above quotation may be found in 3 L.R.N.S. 1132, 85 A.S.R. 449, 5 Ann. Cas. 926, 29 A.L.R. 2d 911, and 67 A.L.R. 2d 965.

"Q. Was beer generally available to the patrons?

"A. Yes, sir, . . .

"Q. Did you witness any fights or disturbances during the course of the show?

"A. Yes, sir, I did.

"Q. Could you estimate how many and what type fights they were?

"A. There were about three or four fights that I saw.

"Q. Were they between individuals or groups - -

"A. They were between individuals. One time they had to stop the band, the music.

"Q. Who stopped the band?

"A. The announcer, or the police went up and told the announcer to stop the band. . . .

"Q. What was occurring at the time the police officer stopped the band from playing?

"A. Well, there was a big fight in the stands. A guy in the stands was throwing a guy to the floor."

In the face of the foregoing quoted testimony it can hardly be said that there was nothing to put the Twin City Amusement Company on notice of possible danger to patrons in leaving the grounds. In *Citizens Coach Co.* v. *Wright,* 228 Ark. 1143, 313 S. W. 2d 949, we held a carrier liable for failure to protect a passenger, saying:

"Therefore, because of the testimony previously recited, and other in the record, we conclude that the evidence was sufficient to take the case to the jury and to support a verdict for some amount."

Here, there was evidence of disorder in the course of the evening; and certainly, with such disorder going on in the meeting, it could be reasonably anticipated that some disorder would take place after the show was over. Yet, with such condition existing, there is no testimony that

any particular precautions were taken to protect the patrons. To my way of thinking the affair was unusual and called for more than usual precautions. Under the facts and circumstances then existing, did the Twin City Amusement Company take reasonable precautions to protect the patrons against assault? In 52 Am. Jur. p. 324, "Theaters, Shows, Exhibitions, Etc." §78, the rule as to who answers that question is stated:

"The general rules and principles which control as to what questions are for determination by the jury and what questions are for the court, and the application of those rules and principles in actions of negligence generally, are controlling in actions to charge owners or proprietors of theaters or public amusements with liability for injuries to invitees. Thus, it is ordinarily a question of fact for the jury to determine, on the facts and circumstances shown in the particular case, the question of negligence or want of due care of the owner or proprietor sought to be charged, even though the injury to a patron was received in a rare, unusual, and unexpected accident."

Reasonable men might differ as to whether reasonable precautions were taken by the Twin City Amusement Company in the case at bar. A Pulaski County Jury by its verdict in effect held that reasonable care was not exercised by the Twin City Amusement Company to protect the patrons against assault by other patrons. I would leave that verdict undisturbed; and, therefore, I dissent.