Glen L. GUSTAVESON, Plaintiff, Appellant and Cross-Respondent,

v.

Gary GREGG and Wasatch Bowling, Inc., a Utah corporation, Defendants and Respondents and Cross-Appellant.

No. 17567.

Supreme Court of Utah.

Sept. 30, 1982.

Carman E. Kipp, Darin G. Kendall, Salt Lake City, for plaintiff, appellant and cross-respondent.

Robert Van Sciver, Jay E. Jensen, Salt Lake City, for defendants and respondents and cross-appellant.

HOWE, Justice:

While a patron of defendant Wasatch Bowling, Inc. (Wasatch), plaintiff Glenn L. Gustaveson suffered personal injuries when he was assaulted by another bowler, defendant Gary Gregg. Plaintiff seeks reversal of the trial court's judgment notwithstanding the verdict and reinstatement of the jury verdict and judgment which found Wasatch negligent because of its failure to provide the plaintiff with protection from an assault which was reasonably foreseeable.

Should this Court reverse the trial court's judgment, Wasatch, by cross-appeal, seeks a new trial because of error in not submitting to the jury issues of contributory negligence and comparative fault of the plaintiff; Wasatch also seeks a judgment on its cross-claim against Gregg for indemnity or, in the alternative, a remand to the trial court to consider the cross-claim for indemnity.

The plaintiff and his wife belonged to a mixed league of married, middle aged and retired couples with a non-drinking, church oriented lifestyle. They bowled on Tuesday nights immediately following a men's league, some of whose members drank and used profanity. Shortly before the date on which the assault on the plaintiff occurred, Wasatch changed its policy and prohibited bowlers from bringing beer and alcoholic beverage mixers into its premises, but required that they be purchased only from its coffee shop. The men's league was accommodated with a new lane assignment closer to the coffee shop, and the mixed league was assigned to bowl in those same lanes immediately following it.

The men's league was consistently tardy in clearing the alleys and repeatedly delayed the start of play of the mixed league. The mixed league registered many complaints with Wasatch concerning the delays and, additionally, concerning rude, abusive and vulgar behavior by some members of the men's league. The management of Wasatch had met only one week prior to the assault on the plaintiff with representatives of the men's league in an effort to solve the problem. Management had made various efforts to get the men's league bowlers off the lanes timely and to restrain their language. The defendant Gregg, secretary of the men's league, and other members of the men's league felt harassed by these complaints to the management. Consequently, tension developed between the two leagues.

On the night of the assault a member of the men's league directed some disparaging comments toward two women from the mixed league. Plaintiff told him that the women did not have to be subjected to such remarks and that he should leave if he had finished bowling. When he responded with a sarcastic remark to the plaintiff, the latter told him that he should gather his belongings and leave. Plaintiff then asked for his name in order to register a complaint with the front desk. The bowler gave his name and went to another area of the building.

The plaintiff reported the incident to a new deskman who had been hired because of the increased number of leagues on Tuesday nights. (He and a manager were taking money and handling the activity associated with the leagues getting off and on the lanes). The deskman assured the plaintiff that the problem would be taken care of. However, even though he testified that he could have taken the time to then mediate the conflict, he took no immediate action because he did not consider the problem sufficiently serious to do so.

After he returned from reporting the incident, the plaintiff, who wore a leg brace in order to bowl because of an operation, was preparing to practice bowl when the defendant Gregg (not the bowler who had made the remarks) beckoned to him. Because he believed (correctly) that Gregg was the secretary of the men's league, the plaintiff thought he and Gregg would only talk about his interaction with the other bowler. The plaintiff began to go over to Gregg even though the plaintiff's wife, having heard members of the men's league express animosity toward him (and having told her husband that she had heard them) tried to discourage her husband from going.

While the plaintiff was looking down at the steps which he was climbing in order to negotiate them successfully, Gregg, who had drunk a couple of beers that night, struck him in the jaw. He was thrown backward from the impact of the blow and he suffered multiple fractures of the jaw, broken dentures and nerve damage.

At the trial the jury found for the plaintiff, awarding him damages against both Gregg and Wasatch and punitive damages against Gregg. The court set aside the jury verdict and judgment against Wasatch and entered judgment in its favor and "no cause of action" against the plaintiff. Additionally, the court granted a judgment of "no cause of action" on Wasatch's cross-claim for indemnity against Gregg.

■ The granting of a motion for judgment notwithstanding the verdict is only justified if, after looking at the evidence and all of its reasonable inferences in a light most favorable to the party moved against, the trial court concludes that there is no competent evidence which would support a verdict in his favor. On review, this Court looks at the evidence in the same manner. *Mel Hardman Productions, Inc. v. Robinson,* Utah, 604 P.2d 913 (1979); *Koer v. Mayfair Markets,* 19 Utah 2d 339, 431 P.2d 566 (1967); *Schow v. Gartone, Inc.,* 18 Utah 2d 135, 417 P.2d 643 (1966); Cf. *Little America Refining Co. v. Leyba,* Utah, 641 P.2d 112 (1982) where a directed verdict was reversed and remanded since reasonable inferences could be drawn from the evidence which supported the judgment for the non-moving party. But cf. *Taylor v. Keith O'Brien, Inc.,* Utah, 537 P.2d 1022 (1975) where there was no evidence to establish either directly, or by inference, the existence of a dangerous condition.

The decisive issue of this case is whether, viewed in a light most favorable to the plaintiff, there is any basis in the evidence including reasonable inferences which could be drawn therefrom to support the jury's determination that Wasatch was negligent. As explained in one of the instructions, the standard of law to be applied to the facts is:

A bowling alley proprietor has a duty to guard bowlers against assaults by fellow-bowlers if the circumstances are such that *an ordinarily prudent person might reasonably anticipate the danger of such assaults and knew or should have known of the tendency of a fellow bowler to assault other patrons of the establishment.* In determining the existence of such circumstances you may consider all the facts surrounding the event in question and all facts of prior events or problems which would provide information or be related to that subject.

Failure to comply with the foregoing requirement of law would constitute negligence. [Emphasis added.]

Viewing all of the evidence in a light most favorable to the plaintiff clearly suggests the existence of tension and animosity between the two leagues. And there is no doubt that Wasatch knew this. Its management personnel had received complaints, had met with the men's league, and had made efforts to curtail the tardiness and other objectionable behavior of men's league bowlers without unduly restricting them.

However, no evidence in the record suggests that Wasatch knew or should have reasonably foreseen that a bowler in one league would assault a member of the other league. Gregg and Gustaveson belonged to separate leagues whose association was minimal. Even though tension existed, there was no evidence that the two leagues, prior to the assault, had exhibited direct confrontations, threats or other behavior which should have reasonably alerted Wasatch that an assault might occur.

■ The proprietor of a public amusement has no duty to anticipate violence when neither the person exhibiting the violence nor others connected with him have previously engaged in any potentially violent activities. A proprietor has a duty to use ordinary care and diligence to protect patrons, but this duty does not extend to becoming the insurer of their safety. See *Repka v. Rentalent, Inc.,* Colo.App., 477 P.2d 470 (1970) where a bowling alley pro-

prietor was held not liable to a patron who was struck in the mouth by a fellow bowler even though the latter had been involved defensively in a fight months earlier and the proprietor had (1) encouraged the assaulted patron to enter into a wager with the assailant which precipitated the assault and had (2) given liquor to the assailant. For other cases denying liability to an assaulted patron under somewhat similar fact circumstances see *Brodie v. Miller,* 24 Tenn. App. 316, 143 S.W.2d 1042 (1940); *Gross v. Wiley,* 231 Or. 421, 373 P.2d 421 (1962); *Fulfer v. Sherry's Liquor Stores,* Cal.App., 149 P.2d 734 (1944); *Hawkins v. Maine & New Hampshire Theaters Co.,* 132 Me. 1, 164 A. 628 (1933). Cf. *Nance v. Ball,* Fla. App., 134 So.2d 35 (1961) where the court held summary judgment in favor of the proprietor was error where he had knowledge of previous temper tirades and physical aggression on the part of the assailant.

■ In this case, Gregg gave no forewarning or indication that he would strike the plaintiff until moments before he did so. He was not the bowler who had exchanged remarks with the plaintiff. He had not previously assaulted or threatened to assault anyone. In fact, he had displayed no tendency for potentially physically abusive behavior prior to his assault on the plaintiff. There was no history of any exchange between Gregg and the plaintiff, nor Gregg and anyone else. The plaintiff, himself, who was told by his wife about hostile remarks from men's league members

against him apparently did not foresee any risk of violence but only thought that Gregg motioned him over to talk.[1] In any event, Wasatch neither was advised nor had any independent knowledge of the remarks. The fact that tension existed between the two leagues, by itself, is simply insufficient from which to find that an ordinarily prudent person in the position of Wasatch's personnel would have foreseen that violence would erupt and one bowler would assault another bowler. It required unreasonable speculation by the jury to conclude from a generalized animosity between two leagues that Wasatch should have had prescience of the attack which resulted.

In short, the evidence in the record, viewed in a light most favorable to the plaintiff is insufficient to support the jury's verdict of negligence against Wasatch. Therefore, the judgment notwithstanding the verdict was proper.

Other issues raised by the parties are foreclosed. Judgment affirmed. Costs to respondent.

HALL, C.J., and STEWART, OAKS and DURHAM, JJ., concur.

---

1. The remarks overheard by plaintiff's wife were "That's the guy in the blue shirt." "Yes, that is the son-of-a-bitch." "Yes, I would like to kill the son-of-a-bitch." The wife testified that the secretary and president of the men's league made the remarks among a group that included two additional men. She responded by turning to look at them and then proceeding to tell her husband what she had heard.