H. Ray Hodnett, Van Buren, AR, S. Dan George, Sallisaw, OK, for plaintiff.

Randolph C. Jackson, Jones, Jackson & Moll, Fort Smith, AR, for defendant.

Carolyn Sue **PARNELL**, Administratrix of the Estate of Melissa Ann Witt, Deceased, Plaintiff,

v.

C & N BOWL CORPORATION, INC. d/b/a Bowling World of Fort Smith, Arkansas, Defendant.

Civil No. 96–2106.

United States District Court, W.D. Arkansas, Fort Smith Division.

Feb. 4, 1997.

*JUDGMENT*

HENDREN, District Judge.

Now on this 4 day of February, 1997, comes on for consideration defendant's Motion for Summary Judgment (Doc. # 8—the "motion") in the above captioned matter, together with plaintiff's response thereto (Doc. # 13), and the Court, being well and sufficiently advised, finds and orders as follows:

1. This is a negligence action wherein plaintiff seeks to hold defendant liable for the death of her decedent, Melissa Witt (hereinafter called decedent).

2. The factual background of the case can be briefly summarized. Decedent disappeared on December 1, 1994. On December 4, 1994, her car was found the parking lot of

Bowling World, a place of business owned and operated by defendant in Fort Smith, Arkansas. Decedent's body was found January 13, 1995, in a remote, wooded area in Franklin County, Arkansas. The cause of her death was later determined to have been asphyxia due to strangulation. Decedent was apparently last seen in defendant's parking lot, but it does not appear that any witness has yet been located who saw decedent leave the parking lot or who saw anything else which might have explained her disappearance. Defendant employs a private security service which provided security for the premises on weekends and alternate weekdays. There was no security present on the date of decedent's disappearance. While bloodstains were found near decedent's car on defendant's parking lot, there appears to be no evidence yet available to explain what may have happened to decedent at the parking lot or to explain how she came to be killed and left in Franklin County. The disappearance of decedent has not yet been explained or solved by local, state or national authorities and no person has yet been charged with any crime in connection with her disappearance and death.

3. Plaintiff's complaint was originally filed in the Circuit Court of Sebastian County, Arkansas, Fort Smith District but was subsequently removed to this Court by defendant on May 28, 1996, pursuant to 28 U.S.C. § 1441 *et seq.* Jurisdiction is proper under 28 U.S.C. § 1332 as defendant is a corporation incorporated and having its principal place of business in the State of Missouri, while plaintiff is a resident of Sebastian County, Arkansas. The amount in controversy exceeds the *minimum requirement.*

4. Plaintiff's complaint states that "defendant failed to exercise ordinary care to provide for the safety of business invitees in the following particulars:

(a) That the parking lot facility did not provide adequate lightning (sic) to allow a lone female to exit her vehicle and enter the premises operated by the Defendant safely and that there were no warnings to individuals that previous criminal activities

had taken place on the parking facility and that they should take precautions in protecting their person and/or property;

(b) By failing to warn the deceased that the parking facility was an area where known criminal activity had taken place frequently over the past several months last past before the abduction of Melissa Ann Witt, that the parking facility maintained at the Defendant's place of business was unsafe for unaccompanied females to exit their vehicles after dark;

(d) [1] By failing to have security available at the parking facility on the night that the deceased was abducted and subsequently murdered;

(e) By improperly utilizing security since security was only in place on two to three nights per week at the Defendants's parking facility and not available on days of the week known to the Defendant on which criminal activity had taken place on their parking facility in the past.

*See* Complaint, page 3.

5. In its Motion for Summary Judgment, defendant states that it "had no duty to protect its business patrons from unforeseen, criminal attacks by third parties." Thus, says defendant, since it had no duty to do something, it cannot be civilly liable in tort for not doing that something.

Plaintiff opposes the motion contending, *inter alia,* that, as a matter of law, the undisputed facts show defendant had a duty towards decedent; that it breached that duty; and that such breach was a proximate cause of injuries and damages to plaintiff's decedent for which plaintiff is entitled to recover from defendant.

6. Summary judgment is appropriate where it is "show[n] that there is not a genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The United States Supreme Court has articulated guidelines for application of Rule 56, stating that "the plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon mo-

---

1. There was no sub-paragraph (c) under paragraph 5 of the complaint.

tion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In such a situation, "there could be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552.

Therefore, once a motion for summary judgment reveals the non-movant's complete failure of proof regarding an essential element of the case, the burden shifts to the non-movant to offer "sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture or fantasy." *Gregory v. City of Rogers,* 974 F.2d 1006, 1010 (8th Cir.1992), *quoting Barnes v. Arden Mayfair, Inc.,* 759 F.2d 676, 681 (8th Cir.1985). The "mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman,* 884 F.2d 365, 366 (8th Cir.1989). If the non-movant fails to demonstrate the existence of a genuine issue of material fact by offering significant probative evidence, the movant is entitled to summary judgment as a matter of law. *Pentel v. City of Mendota Heights,* 13 F.3d 1261, 1263 (8th Cir.1994).

7. Defendant says, *inter alia,* that the flaw in plaintiff's case, which cannot be overcome, is the absence of a duty on the part of defendant.

In support of this argument, defendant cites *Boren v. Worthen National Bank,* 324 Ark. 416, 921 S.W.2d 934 (1996), contending that the *Boren* holding compels dismissal of plaintiff's complaint.

8. In response, plaintiff argues that the *Boren* case is limited to cases involving the liability of financial institutions for crimes at its ATMs.

Plaintiff contends that the better standard for this case is found in the cases of *Twin City Amusement Company, Inc. v. Salater,*

237 Ark. 206, 372 S.W.2d 224 (1963); *Industrial Park Business Club v. Buck,* 252 Ark. 513, 479 S.W.2d 842 (1972); and *Catlett v. Stewart,* 304 Ark. 637, 804 S.W.2d 699 (1991). Plaintiff says these cases "were all upheld and distinguished in the *Boren* decision."

Plaintiff argues that the standard this Court should apply in determining the duty of defendant herein is found in *Twin City,* wherein the Arkansas Supreme said, *inter alia:*

> We find the duty owed by a proprietor of a place of amusement to its patrons in a case such as this succinctly set out in *Restatement, Torts,* § 348, as follows:
>
> 'A possessor of land who holds it out to the public for entry for his business purposes, is subject to liability to members of the public while upon the land for such purpose for bodily harm caused to them by accidental, negligent, or intentional harmful acts of third persons or animals if the possessor by the exercise of reasonable care could have
>
> (a) discovered that such acts were being done or about to be done, and
>
> (b) protected the members of it by
>
>> (i) controlling the conduct of third persons or
>>
>> (ii) giving a warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to receive.'
>
> Restatement, Comment c, following § 348, observes that while such a proprietor is not an insurer, he has a duty to police his premises and employ enough servants to afford reasonable protection.

*Twin City,* 237 Ark. at 208–209, 372 S.W.2d at 225–226.

The plaintiff also relies on the following language used by the Court in *Buck:*

> [W]hile a tavern keeper or bar operator is not an insurer of the safety of his patrons, he is under the duty to use reasonable care and vigilance to protect guests or patrons from reasonably foreseeable injury, mistreatment or annoyance at the hands of other patrons ... Of course the proprietor is not required to protect the patrons ... from unlikely dangers, or improbable

harm, but he is required to take affirmative action to maintain order when harm to patrons is reasonably foreseeable ...

*Buck,* 252 Ark. at 524–525, 479 S.W.2d at 848.

In the alternative, plaintiff says that, even if this Court were to apply one of the standards expressed in *Boren* to the present case, there is sufficient evidence to submit to the jury on the issue of whether the defendant employed means sufficient to afford reasonable protection for the safety of its patrons. Plaintiff provides the Affidavit of Captain J.C. Rider (Capt. Rider) of the Fort Smith Police Department[2] as well as the Incident Reports recorded by Professional Security, Inc.,[3] as evidence which creates an issue of material fact on this key question of foreseeability. *See* Plaintiff's Brief in Support of Response (Doc. # 14), pages 4, 5.

9. In Arkansas, the question of what duty is owed in a possible civil tort situation is always a question of law. In resolving this question, the Arkansas courts have historically started with the premise that one is ordinarily not liable for the acts of another unless a special relationship exists between them. *See First Commercial Trust Co. v. Lorcin Engineering,* 321 Ark. 210, 214–215, 900 S.W.2d 202 (1995); *Hall v. Rental Management, Inc.,* 323 Ark. 143, 148–149, 913 S.W.2d 293 (1996). "Clearly, no such special relationship can be shown to exist between a business owner, such as (defendant herein), and the criminal element at large in any community." *See Boren,* 324 Ark. at 423, 921 S.W.2d at 939. However, *Boren* instructs that under certain circumstances, a business owner could incur liability to business invitees for the foreseeable criminal acts of third parties.

Thus, after starting with the original premise, the Court must move to the specific facts as they appear in this case.

10. It seems clear that the defendant's premises (the bowling alley and its parking lot) can be fairly characterized as a place of amusement. Accordingly, the Court believes that the *Twin City* case cited by plaintiff may be dispositive of the issue now before the Court without the need to closely analyze the import and scope of *Boren.*

In *Twin City,* plaintiff was injured by a rock thrown during an altercation in the parking lot of Barton Coliseum in Little Rock, Arkansas, which occurred after a rock concert held at that facility. After quoting Restatement, Torts § 348—which plaintiff copied into her brief and which is mentioned in paragraph 9 of this opinion—the Arkansas Supreme Court reversed the lower court's judgment for plaintiff and made the following explanation concerning its notion of how the Restatement's general principals should be applied to the specific facts of that case:

This was a *sudden, unexpected and unforeseeable* affray. Appellees would, in effect, require appellant to be an insurer of their safety, whereas appellant is in fact required only to exercise reasonable care. A statement in *Stevenson v. Kansas City, supra,* (187 Kan. 705, 360 P.2d 1) is apt:

"To foresee that plaintiff while attending the wrestling matches would be assaulted at the hour of 11:00 p.m. at the particular spot on the particular ramp on the way to the particular rest room in the Memorial Building in Kansas City would indeed require imaginative foresight and such is not the type of foreseeability required under our law. Only the standard of the reasonable and prudent man ... is required".

\*     \*     \*     \*     \*     \*

"To apply such a high degree of vigilance would make a public amusement impossible because of the expense of guards, time for searching customers to discover possible weapons, etc."

Nothing in the evidence suggests that more servants were necessary to provide reasonable security at the time and place here in question, or that more servants could have prevented the affray. Certain-

---

2. Capt. Rider is in charge of the investigation of the disappearance and murder of decedent.

3. Professional Security, Inc. ("PSI") was employed by defendant to patrol the parking lot of its facility. PSI was hired to work on every

Friday and Saturday night and alternatively on weekday nights, e.g., Monday and Wednesday one week and Tuesday and Thursday the following week.

ly a proprietor is not required to have an attendant, guard or usher for every patron.

In the absence of facts which would have charged appellant with the discovery contemplated in Restatement, Torts, § 348, *supra,* there was nothing to submit to the jury.... (Emphasis added)

*Twin City,* 237 Ark. at 209–210, 372 S.W.2d at 226.

The unfortunate disappearance of plaintiff's decedent apparently happened at a place of amusement—the parking lot of defendant's bowling alley. Although there is no evidence as to exactly what took place, there is also no evidence to suggest that the event was anything other than sudden, unexpected and unforeseeable. In *Twin City*—as pointed out by the dissent—there was evidence of drinking, disturbances and fights during the rock performance. The proof showed that police stopped the band at one point because of a fight in the audience. Notwithstanding such evidence, the majority still found there was no reason to foresee that an affray such as the one in which plaintiff was injured would happen in the parking lot after the concert. In the case at bar, there is no evidence of any drinking, disturbance, fight or anything else which might have occurred prior to the decedent's abduction at defendant's parking lot which should have caused defendant to foresee that harm could come to the decedent in its parking lot.

Accordingly, in the Court's view, plaintiff's complaint must fail, as a matter of law, based upon the authority of *Twin City.*

11. Notwithstanding the Court's view that *Twin City* controls in this case, it is useful to discuss the *Boren* decision as well since both parties discuss it extensively in their briefs.

The *Boren* court cited *Twin City* with approval but, since the facts of *Boren* involved a bank parking lot with an ATM—as opposed to a place of amusement—the court did not regard it as controlling and felt it necessary to further analyze the state of the law on a matter which it considered to be of first impression.

In *Boren,* the Arkansas Supreme Court summarized the general rule followed in Arkansas concerning the duty of business owners to protect patrons from criminal attack, as follows:

[W]hile this court has on several occasions recognized the duty of a business owner to protect its patrons from criminal attacks, we have done so only where the owner or its agent was aware of the danger presented by a particular individual or failed to exercise ordinary proper care after an assault has commenced.

*Boren,* 324 Ark. at 425, 921 S.W.2d at 940.

The Court found that one prior incident of robbery at an automatic teller machine (ATM) owned by defendant, Worthen Bank, was not enough to make another incident of robbery foreseeable so as to give rise to a duty to warn against such. *Id.* And, since "foreseeability of the criminal act is a crucial element in determining whether a duty is owed," the *Boren* court upheld the trial court's granting of defendant's motion for summary judgment.

Taking the view that the particular fact situation before it was different than previous cases (including *Twin City*) it had considered, the *Boren* court apparently attempted to search for a reasonable criteria to use in that case which would be consistent with its previous pronouncements in cases already decided. The Court discussed three (3) general tests which have evolved for determining whether a duty of care is owed by financial institutions to protect ATM users against the criminal acts of third parties. *Id., citing 3 Premises Liability,* Second Edition, § 49.3 (1995) and Gregory W. Hoskins, *Violent Crimes at ATMs: Analysis of the Liability of Banks and the regulation of Protective Measures,* 14 N.Ill.U.L.Rev. 829 (1994). It is worthwhile to review the Court's discussion of those three (3) tests:

(a) *"Specific Harm" Test:* The first test discussed is the "Specific Harm" test which limits foreseeability to situations where the business owner is aware of the imminent probability of specific harm to its customer. *Boren,* 324 Ark. at 426, 921 S.W.2d at 940, *citing Cornpropst v. Sloan,* 528 S.W.2d 188 (Tenn.1975); *Page v. American Nat. Bank &*

*Trust Co.,* 850 S.W.2d 133 (Tenn.App.:1991); and *Fuga v. Comerica Bank–Detroit,* 202 Mich.App. 380, 509 N.W.2d 778 (1993). The *Boren* court made the following observations regarding the "Specific Harm" test:

> This rule, as articulated in *Page, supra,* provides that there will be no duty upon business owners to guard against criminal acts of a third party unless they 'know or have reason to know that acts are occurring or about to occur on the premises that pose imminent probability of harm to an invitee.' Using this approach, it would be virtually impossible to ever hold a financial institution liable for a criminal act occurring at an ATM. Since ATM's are almost always unmanned, the owner would consequently never be aware of a specific 'imminent probability of harm' to an invitee.

*Boren,* 324 Ark. at 426, 921 S.W.2d at 940.

(b) *"Prior Similar Incidents" Test:* The second test discussed is the "Prior Similar Incidents" test which focuses on the existence of prior incidents in order to determine whether a particular crime is foreseeable. *Id.* In this analysis, the similarity, frequency, location, and proximity in time of the prior incidents are the key elements to be considered. *Id.* The Court said that "[f]or a duty to protect invitees from criminal acts by third persons to arise from prior criminal conduct, the prior crimes must be violent and sufficiently numerous and recent to put the landowner on notice that there is a likelihood of danger ..." *Id.* at 427, 921 S.W.2d at 941, *citing 3 Premises Liability,* Second Edition, § 49 (1995).

(c) *"Totality of the Circumstances" Test:* The third and final test discussed in *Boren* is the "Totality of the Circumstances" test. The Court said that the analysis of this test "expands the prior similar incidents standard to a consideration of all circumstances surrounding the event." *Boren,* 324 Ark. at 427, 921 S.W.2d at 941. "The analysis thus includes the nature, condition, and location of the premises, in addition to any prior similar incidents, and a duty can be found where no prior criminal attacks have occurred." *Id., citing Torres v. United States National Bank,* 65 Or.App. 207, 670 P.2d 230 (1983); *Isaacs v. Huntington Memorial Hospital,* 38 Cal.3d 112, 211 Cal.Rptr. 356, 695 P.2d 653 (1985).

The "Totality of the Circumstances" test was specifically rejected by the Arkansas Supreme Court in *Boren.* The Court reasoned that to adopt that test "would result in the imposition of a duty to guard against random criminal acts by third parties" and "shift responsibility for violent, non-foreseeable, third party criminal conduct from the government to the private sector ..." *Boren,* 324 Ark. at 428, 921 S.W.2d at 941.

Although the Court outrightly rejected the "Totality of the Circumstances" test, it neither rejected nor adopted the other two foreseeability tests. Instead, the *Boren* court simply held that "... two incidents of robbery at Worthen ATMs in the nearly eight years prior to the attack on Boren are not sufficient to impose a duty on Worthen to guard against the criminal acts of a third party." *Id.*

This Court perceives no reason or authority to disagree with the Arkansas Supreme Court's rejection of the "Totality of the Circumstances" test as to the issue of foreseeability. It would seem that, if there is evidence upon which to hold that harm or injury was clearly foreseeable so as to give rise to a duty to either prevent or correct the situation giving rise to the foreseeable harm or injury, either of the other two tests ("Specific Harm" or "Prior Similar Incidents") would have application. If neither does, then it begs the question to nevertheless seek to impose such a duty by toting up as many circumstances as possible and as needed to birth such a duty. If such were permitted in the law, the result would be—as observed by the *Boren* court—to impose a duty upon the owner of a premises opened to the public to guard against random criminal acts by third parties and to make the owner—instead of the law enforcement authorities—responsible for his and her customers' protection against violent, non-foreseeable criminal conduct by others.

This Court also believes that—while the Arkansas Supreme Court has not specifically endorsed either the "Specific Harm" or "Prior Similar Incidents" tests for use when de-

termining whether a duty exists by the owner of a public place to protect its customers in a given situation—the *Boren* case provides a basis for believing that either can and should be used in an appropriate case.

Defendant insists the Court should summarily dismiss plaintiff's complaint against it under either the "Specific Harm" test or the "Prior Similar Incidents" test since, it argues, application of either reveals no basis for finding that any injury or harm to plaintiff's decedent was foreseeable so as to impose a duty upon defendant to act differently than it did prior to decedent's disappearance.

Addressing the "Specific Harm" test, defendant's argument is that there is no evidence to show that defendant was aware of the imminent probability of specific harm to decedent or any other of its customers on its parking lot. It insists there is no evidence to show that defendant knew—or ought to have known—that a crime was occurring or about to occur on the date in question. "In fact", says defendant, "there are no witnesses who saw the alleged assault or abduction of (deceased)." "Thus," says defendant, "under the Specific Harm Test, no duty arose on the part of Bowling World under the facts of this case." *See* Defendant's Brief In Support (Doc. # 9), page 6.

As for the "Prior Similar Incidents" test, defendant argues that there were no *similar* incidents which occurred prior to the alleged incident in question which would have alerted defendant as to the foreseeability that decedent might come to harm in the parking lot. In support of its argument, defendant points first to plaintiff's answer and supplemental answer to defendant's interrogatory No. 30 which, it says, shows that four incidents of theft were reported to the Fort Smith Police Department as having occurred at Bowling World in the one-year period preceding the date of decedent's disappearance.

One of the incidents involved the theft of a bowling bag from inside the building and three incidents involved theft of property from vehicles in defendant's parking lot. Defendant points out that one incident was subsequently resolved when the person who made the report later informed the police that he "found the golf clubs that he reported stolen". Defendant therefore argues that this evidence shows only two incidents in its parking during the previous year with neither of them involving violence or threat to personal safety.

Defendant also attached to its motion for summary judgment the affidavit of Randy Richard who has been manager at Bowling World since its opening in 1991. In his affidavit Richard said he was not aware of "any rape, murder, robbery, kidnapping or abduction", nor any "crimes of physical violence which occurred on the parking lot of Bowling World between the date it opened for business and December 1, 1994, which resulted in serious physical injury or the need for medical attention or services." *See* Richard Aff.

Defendant argues that the theft of property from parked vehicles is in no way similar to an assault, abduction or murder. Accordingly, says defendant, since a previous incident of robbery at the ATM in the *Boren* case was not enough to give rise to a duty to protect customers from the *similar* or identical crime of robbery at the ATM, two previous incidents of theft is not enough to give rise to a duty to protect customers from *dissimilar* crimes of kidnapping, assault and murder. "Zero incidents of violent crime at Bowling World", says defendant, "do not give rise to a duty to protect patrons and visitors from an unforeseeable criminal attack which was totally dissimilar from the few minor incidents relied upon by Plaintiff." *See* Defendant's Brief in Support (Doc. # 9), page 8.

Under *Boren*, the foreseeability of apparent harm to decedent on defendant's parking lot on December 1, 1994, is the key issue in determining whether defendant had a duty to take measures to prevent the same.

Plaintiff insists the rationale and holding of *Boren* should be limited to only "ATM cases". However, it would appear that *Boren* was, instead, merely a extension of the reasoning theretofore approved by the Court in previous cases such as, for example, *Twin City*.

*Boren* furnishes an extensive history of premises liability law in Arkansas (which history includes the three cases relied upon by

plaintiff) and combines that authority with case law from foreign jurisdictions dealing more directly with "ATM cases" to glean the three standards described above.

In the Court's view, it is unnecessary to labor over the question of which particular "test" is applicable in the case at bar since, under any of such tests—including the discredited "Totality of Circumstances" test—the Court believes the result would have to be the same.

The parties seem to be in agreement regarding the material facts of the case and the Court has hereinabove set out what it considers those facts to be. When the material facts are not in dispute, this Court must determine whether—as a matter of current Arkansas law—there is a duty imposed upon defendant which it breached with a proximate result that plaintiff's decedent was injured.

The Court has already noted its belief that the facts of the case must compel a dismissal of plaintiff's complaint on the authority of *Twin City.* It believes the same result would occur under *Boren.*

There simply is no evidence that defendant knew—or had reason to know—that plaintiff's decedent was in danger of any particular harm at the hands of any particular person prior to the time of her disappearance. Accordingly, resort to the "Specific Harm" test is unavailing to plaintiff.

The *Boren* case instructs that in determining whether a particular crime was foreseeable under the "Prior Similar Incidents" test, the similarity, frequency, location, and proximity in time of the prior incidents are the key elements to be considered in the analysis. Therefore, the incidents which are alleged to have occurred at defendant's bowling alley parking lot prior to the decedent's disappearance should be analyzed with the above factors in mind in determining whether the harm which came to plaintiff's decedent was foreseeable.

In its reply to plaintiff's response to defendant's motion for summary judgment, defendant provides what purports to be an outline of all incidents which occurred in defendant's parking lot prior to the date of decedent's disappearance. Plaintiff doesn't challenge the outline so the Court will consider it as being true and accurate. The outline shows that these incidents include those reported by the Fort Smith Police Department—the three incidents previously discussed—and those incidents reported by Professional Security Incorporated (PSI)—the private security concern with whom defendant contracted for security service in connection with the bowling alley and parking lot.

Defendant first argues that the PSI Incident Reports which were supplied by plaintiff in her response should not be considered in connection with the motion at hand due to a lack of testimony or affidavits from anyone with personal knowledge of the information contained therein. However, even if considered, says defendant, they do not create a factual issue on the question of foreseeability.

According to the Incident Reports, none of the thirteen (13) incidents which occurred between August 15, 1993, and November 29, 1994, involved kidnapping, assault or murder. None of these thirteen (13) incidents feature personal injury and only three involved an alleged argument or fight. Two of the incidents involving alleged arguments or fights appear to be domestic arguments with no evidence of physical blows being struck. There is likewise no evidence that the remaining incident featured any physical confrontation or injury.

In the Court's view, none of these incidents provides a basis for concluding that the crime against decedent was foreseeable in any degree and to otherwise so conclude would be little more than speculation.

In *Boren,* the Arkansas Supreme Court held that an incident of robbery at the very same location (in a well-known, high-crime area in the City of Little Rock), and just three months prior to the robbery upon which the case was based, was not enough to create a triable issue on foreseeability that future robberies might occur at the ATM. In light of that holding, this Court certainly could not say that the prior incidents discussed above (with no indication that they occurred in a well-known, high-crime area in the City of Fort Smith) were similar enough

to decedent's apparent abduction and her certain murder to create a submissible issue as to foreseeability.

Bound up in all the "tests" which courts—and the Restatement—have said may be applicable to the question of what duty, if any, an owner of land may have to his or her customers and the public at large is the same question of "foreseeability". In the Court's view, none of these tests—even if viable and applicable to the facts of this case—would yield the result of finding that defendant had a duty to do something which perhaps could have prevented the commission of what appears to have been a sudden, unexpected, unforeseeable and brutal crime on its parking lot.

12. Based upon the foregoing authorities, reasoning and analysis, the Court concludes that—on these facts—the tragic event which befell plaintiff's decedent was not foreseeable to an extent that the law imposed a duty upon defendant to take measures to guard against such an event. Accordingly, defendant's motion for summary judgment must be granted and the cause dismissed.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment should be, and hereby is, granted.

IT IS SO ORDERED on the date first hereinabove written.