United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**
No. 97-1683

Roy Willmon, Personal            *
Representative of the Estate        *
of Carla Willmon Jones,            *
Deceased,                          *
                          *
        Appellant,            *
                          *    Appeal from the United
States                           *
    v.                        *    District Court for the
                          *    Eastern District of
                               Arkansas
Wal-Mart Stores, Inc.            *
                          *
            Appellee.              *

_____

Submitted:  November 19, 1997

Filed:  May 12, 1998

_____

Before MCMILLIAN and WOLLMAN, Circuit Judges, and STEVENS,[1] District
    Judge.

_____

STEVENS, District Judge.

     Roy Willmon, personal representative of the estate of Carla Willmon
Jones, deceased, filed this wrongful death action against Wal-Mart Stores,
Incorporated, claiming that Wal-Mart was negligent by failing to implement
feasible precautions and

_____

     [1]The Honorable Joseph E. Stevens, Jr., United States District Judge for the
Western District of Missouri, sitting by designation.

failing to use ordinary care to maintain the premises of the Wal-Mart Supercenter in Searcy, Arkansas, in a reasonably safe condition. The district court granted defendant's motion for summary judgment dismissing Willmon's entire action.[2] Willmon timely appealed. We affirm.

I.  BACKGROUND

At approximately 9:30 p.m. on the night of April 17, 1995, Mitchell Skinner and Patric Patterson drove to the Wal-Mart Supercenter in Searcy, Arkansas, and parked their vehicle in a space close to the door. For thirty minutes or more, the two sat in their car smoking marijuana and methamphetamine. Later, both men left the vehicle and proceeded to the front of the store where Skinner watched as Patterson pretended to make a telephone call and play a video game. Skinner was dressed in shorts and a tank top, Patterson wore long pants and a pull-over shirt. Patterson also carried a twelve inch-knife in his pants which created a bulge in his pocket.

After the two had pretended to make the telephone call and to play the video game for approximately ten minutes, they sat down on a bench in front of the store. Skinner and Patterson spent ten to fifteen minutes on the bench during which time Patterson made comments of a sexual nature about various women as they entered the store. Skinner was shaking due to his consumption of methamphetamine, and he returned to the car.

At approximately 10:15 p.m., Carla Willmon Jones arrived at the Wal-Mart Supercenter, parked her car, and entered the store. While she was shopping, Skinner and Patterson moved their car to a parking space near hers. When Ms. Jones returned, Patterson approached her and asked for assistance starting their car. Ms. Jones refused. When she opened her car door Patterson shoved her inside. Thereafter,

_____

[2] Willmon v. Wal-Mart Stores, Inc., 957 F. Supp. 1074 (E.D. Ark. 1997).

Skinner and Patterson drove Ms. Jones' vehicle to a nearby business and forced her into the trunk and then returned to Wal-Mart to pick up their vehicle. Later that evening, Skinner and Patterson raped and murdered Ms. Jones.

Roy Willmon, acting on behalf of his deceased daughter's estate, brought this wrongful death action against Wal-Mart pursuant to Arkansas law. Willmon alleges that Wal-Mart is liable for negligently failing to implement feasible precautions and failing to use ordinary care to maintain the store premises in a reasonably safe condition. The district court granted defendant's motion for summary judgment concluding that Wal-Mart owed no duty of care to Ms. Jones under Arkansas law.

II. DISCUSSION

This court reviews de novo the district court's decision to grant a motion for summary judgment. Brodnicki v. City of Omaha, 75 F.3d 1261, 1264 (8th Cir. 1996). The judgment will be affirmed only if the record shows that there is no genuine issue of material fact and the prevailing party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

Willmon argues that the court erred in concluding that Wal-Mart was not liable under Arkansas law because it was under no duty to protect Ms. Jones from the criminal acts inflicted upon her. The courts of Arkansas have not directly addressed the issue presented in this case. Under these circumstances, this court must attempt to predict the manner in which Arkansas courts would decide the question. Pearce v. Cornerstone Clinic for Women, 938 F.2d 855, 857 (8th Cir. 1991).

The district court concluded that Arkansas would not impose liability on Wal-Mart for failure to protect Ms. Jones pursuant to Boren v. Worthen Nat'l Bank of Arkansas, 324 Ark. 416, 921 S.W.2d 934 (Ark. 1996). In Boren, the Arkansas Supreme Court addressed the question of whether a bank had a duty to protect patrons

using its ATM machines from criminal attacks by third parties. In <u>Boren</u> the court began its analysis by noting that on several prior occasions Arkansas recognized the duty of a business owner to protect its patrons from criminal attacks. However, it also noted that a duty was imposed only where the owner or its agent was aware of the danger presented by a particular individual or failed to exercise proper care after an assault had commenced. 921 S.W.2d at 940. The court then described the three tests that have developed in other jurisdictions for determining when a business owes its invitees a duty of care to protect them from criminal acts of third parties and considered the applicability of each to the case.

First addressed was the Specific Harm Test. Under this approach a business owner is liable for failing to protect its customer if it is aware of the imminent probability of specific harm to that customer. *See, e.g.*, <u>Cornpropst v. Sloan</u>, 528 S.W.2d 188 (Tenn. 1975); <u>Page v. American Nat'l Bank & Trust Co.</u>, 850 S.W.2d 133 (Tenn. App. 1991); <u>Fuga v. Comercia Bank-Detroit</u>, 202 Mich. App. 380, 509 N.W.2d 778 (1993). There is no duty placed upon businesses to protect their customers from criminal acts of third parties unless they know or have reason to know that acts are occurring or are about to occur on the premises that pose imminent probability of harm to an invitee. <u>Boren</u>, 921 S.W.2d at 940. This test was not adopted by the court in <u>Boren</u>. Rather, the court concluded that this approach was inapplicable in the ATM context, noting that if this were the standard for liability it would be "virtually impossible" to hold a financial institution liable for criminal acts occurring at ATM machines because ATMs are almost always unmanned and, therefore, the owner would never be aware of a specific imminent probability of harm to is customer. <u>Id.</u>

Second, the court considered the Prior Similar Incidents Test. Under this approach a business is liable for failing to protect its customers from criminal acts if similar acts have previously and recently occurred on the property in sufficient numbers to put the business owner on notice of the likelihood of danger. *See* <u>Williams v. First Ala. Bank</u>, 545 So.2d 26 (Ala. 1989); <u>Dyer v. Norstar Bank, N.A.</u>, 186 A.D.2d 1083,

-4-

588 N.Y.S.2d 499 (1992). In <u>Boren</u> the court found that this was the appropriate test for determining the bank's liability but held that because there had only been one prior attack at the same ATM three months earlier, the attack on Boren was not reasonably foreseeable, and thus the bank was not liable.

Third, the court considered the Totality of the Circumstances Test. Under this approach if the nature, condition, and location of the premises, and any prior similar incidents make the criminal act at issue foreseeable, then the business owner is liable for failing to protect its customers from these types of acts. *See* <u>Torres v. United States Nat'l Bank</u>, 65 Or. App. 207, 670 P.2d 230 (1983); <u>Isaacs v. Huntington Mem'l Hosp.</u>, 38 Cal. 3d 112, 211 Cal. Rptr. 356, 695 P.2d 653 (1985). This test is the most expansive and the court in <u>Boren</u> specifically declined to adopt it noting that "[t]o do so would result in the imposition of a duty to guard against random criminal acts by third parties, a duty we have heretofore not imposed on any other businesses." <u>Boren</u>, 921 S.W.2d at 941.

The district court concluded that the Arkansas Supreme Court would extend <u>Boren</u> beyond cases involving criminal attacks at ATM machines and apply it to the facts of this case. Because <u>Boren</u> specifically rejected the Totality of the Circumstances test but left open the question of which of the remaining two tests should be applied, the district court here applied both the Specific Harm and the Prior Similar Incidents tests.

With respect to the Specific Harm Test, Willmon contends that the facts he presented are sufficient to create a jury question on the issue of whether Wal-Mart had reason to know of the imminent probability of harm to Ms. Jones. Willmon maintains that Skinner and Patterson were highly visible on Wal-Mart's premises for at least an hour prior to the abduction and that it was clear that they had no legitimate business purpose being there. Further, three female patrons who saw Skinner and Patterson at Wal-Mart just prior to the abduction testified by deposition they felt that their physical

safety was threatened by these two men. The district court noted, however, that Willmon had presented no evidence that any Wal-Mart employee knew that Skinner and Patterson were on the premises on the evening Ms. Jones was abducted or that they were acting strangely. Further, the court held that even if an employee had observed the men, their conduct was non-violent and could not have foreshadowed their subsequent violent crimes against Ms. Jones. Accordingly, because Wal-Mart did not know or have reason to know that the crimes against Ms. Jones were occurring or that there was an imminent probability of harm to her, the district court concluded that liability could not be imposed under the Specific Harm test. We find no error in the district court's ruling on this issue.

The district court also concluded that Wal-Mart could not be held liable under the Prior Similar Incidents test. Willmon submitted evidence demonstrating that between January 22, 1993, and April 17, 1995, the date of Ms. Jones' abduction, there were fifty-one reports of crimes at the Wal-Mart Supercenter in Searcy. Of these fifty-one incidents, however, only six could be considered violent. Therefore, the court concluded that only these six incidents could possibly be considered sufficiently similar to be relevant to a determination of whether the abduction, rape, and murder of Ms. Jones was foreseeable to Wal-Mart.

The six incidents reported were: 1) on December 22, 1993, a man swung a tire iron at his sister in the parking lot, 2) on May 10, 1994, a fight broke out in the parking lot involving five men, 3) on June 5, 1994, another fight occurred in the parking lot involving five men, 4) on August 21, 1994, a man slapped another man inside the store, 5) on December 24, 1994, two men were involved in a fight in the parking lot, and 6) on March 3, 1995, a man struck another man inside the store. The district court compared these incidents with the attack on Ms. Jones and noted that none of these prior incidents appeared to have resulted in serious bodily injury, none involved a weapon, and none was a rape or abduction. Therefore, the court concluded that these prior incidents were not sufficiently similar to make Ms. Jones' abduction, rape, and

murder foreseeable to Wal-Mart, and thus the store had no duty to protect her from these crimes.  We find no error in the district court's ruling on this issue.[3]

III. CONCLUSION

We conclude that, however tragic the circumstances of Ms. Jones' abduction and death, the district court did not err in finding that Wal-Mart was under no duty to protect her from the attack by Skinner and Patterson.  Accordingly, we affirm the district court's grant of summary judgment to Wal-mart.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT

---

[3] We note that Judge Hendren reached a similar conclusion regarding prior incidents in a business owner's parking lot.  *See* Parnell v. C & N Bowl Corp., Inc., 954 F. Supp. 1326 (W.D. Ark. 1997), *aff'd* 124 F.3d 208 (8th Cir. 1997) (table).